**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-2131**

———————

DENISE MINTER, Individually and on behalf of a class of
consumers similarly situated; JASON ALBOROUGH; RACHEL
ALBOROUGH; LIZBETH T. BINKS,

              Plaintiffs – Appellants,

     and

FRANK LAROCCA; CATHERINE LAROCCA; MEHDI NAFISI; FOROUGH
IRANPOUR; KENNETH PFEIFER; ANGELA PFEIFER,

              Intervenors/Plaintiffs,

     v.

WELLS FARGO BANK, N.A.; LONG & FOSTER REAL ESTATE, INC.;
PROSPERITY MORTGAGE COMPANY; WALKER JACKSON MORTGAGE
CORPORATION, formerly doing business as Prosperity Mortgage
Corporation; WELLS FARGO VENTURES, LLC,

              Defendants – Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore. William M. Nickerson, Senior District
Judge. (1:07-cv-03442-WMN)

———————

Argued: May 14, 2014          Decided: August 5, 2014

———————

Before NIEMEYER and WYNN, Circuit Judges, and Robert J. CONRAD,
Jr., United States District Judge for the Western District of
North Carolina, sitting by designation.

———————

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Conrad joined.

_____

**ARGUED:** Cyril Vincent Smith, ZUCKERMAN SPAEDER LLP, Baltimore, Maryland, for Appellants.  William M. Jay, GOODWIN PROCTER LLP, Washington, D.C., for Appellees.  **ON BRIEF:** William K. Meyer, ZUCKERMAN SPAEDER LLP, Baltimore, Maryland; Richard S. Gordon, Benjamin H. Carney, GORDON, WOLF & CARNEY CHTD., Baltimore, Maryland, for Appellants.  Irene C. Freidel, Brian M. Forbes, K&L GATES LLP, Boston, Massachusetts; Andrew Jay Graham, John A. Bourgeois, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellees Wells Fargo Bank, N.A., and Wells Fargo Ventures, LLC. David L. Permut, Sabrina M. Rose-Smith, GOODWIN PROCTER LLP, Washington, D.C., for Appellee Prosperity Mortgage Company.  Jay N. Varon, Jennifer M. Keas, FOLEY & LARDNER LLP, Washington, D.C., for Appellees Long & Foster Real Estate, Incorporated, and Walker Jackson Mortgage Corporation.

_____

2

WYNN, Circuit Judge:

In this class action suit, Plaintiffs Denise Minter, Jason and Rachel Alborough, and Lizbeth Binks brought suit on behalf of a group of consumers alleging that Wells Fargo and Long & Foster Real Estate (collectively, "Defendants") violated Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Specifically, Plaintiffs allege that Defendants created a joint venture, Prosperity Mortgage Company ("Prosperity"), to skirt RESPA's prohibition on kickbacks while failing to disclose this business arrangement to its customers.

After a trial on a portion of Plaintiffs' claims, the jury returned a verdict that foreclosed Plaintiffs' untried kickback claims. Plaintiffs moved for a new trial on the kickback claims but were denied. Due in large part to Plaintiffs' failure to move for judgment as a matter of law before the jury reached its verdict, as well as the highly deferential lenses through which we must review the issues before us, we conclude that the district court did not abuse its discretion as to any of Plaintiffs' challenges. Accordingly, we affirm.

I.

In 1993, Wells Fargo and Walker Jackson Mortgage Corporation, a subsidiary and affiliate of Defendant Long & Foster Real Estate, formed Prosperity Mortgage Company as a

3

joint venture.[1]  Prosperity was created as "a mortgage lender that funded its loans via a wholesale line of credit provided by Wells Fargo[.]"  J.A. 205.

Plaintiffs Denise Minter and Jason and Rachel Alborough, along with a class of similarly situated consumers, purchased their homes with a Long & Foster realtor and obtained mortgages through Prosperity in 2006 and 2007.  In late 2007, Plaintiffs brought this class action suit alleging that Wells Fargo and Long & Foster created Prosperity as a "sham" or a front organization formed to facilitate unlawful referral fees and kickbacks in violation of RESPA, as well as a variety of other state and federal law claims.[2]  In particular, Plaintiffs alleged that Defendants created Prosperity to allow Long & Foster to refer mortgage clients to Wells Fargo in exchange for kickbacks.  Plaintiffs also alleged that Prosperity performed little to no

---

[1] At that time, the parties to the joint venture were Norwest Mortgage, Inc. and Walker Jackson Mortgage Corporation, which was then known as Prosperity Mortgage Corporation.  Norwest Mortgage later became Wells Fargo.  For the purposes of this opinion, the companies' current names, Wells Fargo and Long & Foster, will be used.

[2] Plaintiffs also alleged violations of the Racketeer Influenced and Corrupt Organizations Act, the Maryland Consumer Protection Act, and derivative tort claims, but none of these are the subject of this appeal.  Before trial, the parties stipulated to dismiss most of the counts in the complaint, and Plaintiffs proceeded only on their RESPA and  RESPA conspiracy claims.  Later, the district court found that RESPA does not support a cause of action for conspiracy and granted Defendants summary judgment on the conspiracy claim.  Thus, the only remaining claims on appeal are the three RESPA claims.

real work in connection with the mortgage transactions and that

Wells Fargo was the real lender. Plaintiffs asserted three

RESPA violations:

1. The Section 8(a) claim alleged that Wells Fargo paid
   kickbacks to Long & Foster in exchange for settlement
   services.
2. The Section 8(c) claim alleged that Wells Fargo and
   Long & Foster operated Prosperity as a "sham" lender,
   i.e., not a bona fide provider of settlement services,
   to funnel Long & Foster real estate customers to Wells
   Fargo for mortgage products.
3. The Section 8(c)(4) claim alleged that Defendants, as
   members of an affiliated business arrangement as
   defined by RESPA, did not comply with RESPA's
   requirement to provide borrowers with valid affiliated
   business arrangement disclosures.

J.A. 206, 250, 292-301, 1036-37, 1095-97.[3]

Plaintiffs moved to certify a class for all of their

claims. The district court bifurcated Plaintiffs' proposed

class into two separate classes: (1) the Timely Class, including

all the class members whose claims were brought within RESPA's

one-year statute of limitations, and (2) the Tolling Class, for

---

[3] The district court and the parties refer to the claims as Section 8 claims in light of the Section's location in the statute as enacted by Congress, RESPA, Pub. L. No. 93533, 88 Stat. 1724, but these references correspond to subsections of 12 U.S.C. § 2607. Section 8(a) sets out RESPA's prohibition on kickbacks while Section 8(c) provides exemptions from that prohibition. In this case, Plaintiffs alleged direct violations of Section 8(a)'s prohibition as well as Section 8(c) claims, which assert that Defendants failed to meet the requirements for the Section 8(c) exemptions from Section 8(a). In this appeal, we are not asked to decide whether Section 8(a) and Section 8(c) provide separate claims, and we therefore take no position on that issue.

5

all class members whose claims were brought after the statute of limitations period expired.

Thereafter, the district court certified Plaintiffs' Section 8(c) and 8(c)(4) claims, but did not certify the Section 8(a) claims because "only those Prosperity clients who were referred [to Prosperity] by Long & Foster may proceed under [the Section 8(a)] claim" and certifying a sub-class for that particular sub-set of members would "unnecessarily complicate and obscure" the central inquiry into Prosperity's legitimacy as a lender. J.A. 260-61. The district court noted that "[s]hould Plaintiffs fail under their Section 8(c) claims, the Court may entertain further briefing with respect to the Section 8(a) theory." J.A. 261. The district court also chose not to certify the Tolling Class on any of the claims because it did not have a representative member.

In response, Plaintiffs amended their complaint to include a new named plaintiff, Lizbeth Binks, as a representative of the Tolling Class, and renewed their motion to certify the Tolling Class on all their claims. The district court reiterated that it would not certify the Section 8(a) claims for either the Tolling or the Timely Class. After completing a class certification analysis, the district court certified the Tolling Class on its Section 8(c) and 8(c)(4) claims only.

6

Defendants then moved for summary judgment on the Timely and Tolling Classes' claims. The district court denied their motions due to factual disputes that could not be resolved at the summary judgment stage.[4] Before trial on the Section 8(c) and 8(c)(4) claims, Plaintiffs suggested that the individual Section 8(a) claims, although not certified as a class, should be tried in the same trial. The district court rejected that request, stating that "[f]ollowing the upcoming trial, the Court will solicit proposals from the parties related to scheduling a trial of Plaintiffs' individual § 8(a) claims." J.A. 1097. See also J.A. 1100 n.2 ("Plaintiffs' individual claims under § 8(a) will be tried at a later date.").

Before trial, Defendants moved to decertify both the Timely and the Tolling Classes. The district court decertified the Tolling Class due to the court's concerns about the tolling

---

[4] However, the district court noted that it would consider decertifying the Tolling Class at a later point:

> While the Court concludes that summary judgment should be denied . . . as to Binks' claim, after delving into the arguments regarding tolling, . . . the Court finds it must at least consider the option to which it alluded when certifying the Tolling Class, i.e., exercising its discretion to decertify that class should issues of manageability begin to overwhelm the advantages of certification. The Court will delay that determination, however, until after the completion of the Petry trial.

J.A. 780 (citation omitted).

7

doctrine's individualized application.[5] The district court also amended the Timely Class by limiting it to class members who were referred to Prosperity by Long & Foster and excluding any class members whose loans were not transferred to Wells Fargo but were instead sold to others.

Also before trial, Plaintiffs moved to exclude evidence and argument about whether Plaintiffs had suffered economic injury, including testimony from one of Defendants' experts, Dr. Marsha Courchane. The district court agreed, ruling that Dr. Courchane's testimony and other "evidence of a lack of economic damages" was minimally relevant and deemed the probative value of the expert testimony "substantially outweighed by a danger of unfair prejudice, confusion, misleading the jury, or delay." J.A. 1119-20. However, the court stated that it would reconsider that ruling if Plaintiffs "open[ed] the door to evidence of economic injury during their case-in-chief[.]" J.A. 1120. Later, the district court ruled that Defendants would be allowed to ask about whether Plaintiffs "shopp[ed] around for their mortgages and whether they chose Prosperity because it was

---

[5] After the trial, the district court entered Administrative Order Number 5. That order explained the re-definition of the classes, stayed the decertification of the classes until notice was provided, and severed the individual 8(a) claims of the Timely Class representatives, Minter and the Alboroughs, from the individual Section 8(a) claims of the Tolling Class representative, Binks, and ordered "that those claims shall be subject to separate proceedings, if necessary." J.A. 1267-69.

offering better rates[,] lower costs, or better service." J.A. 1162 (quotation marks omitted). The court explained that this evidence "is relevant background on the Named Plaintiffs' claims[,]" distinct from unfairly prejudicial evidence of their lack of economic harm. Id.

After resolving these motions, the district court held the trial on Plaintiffs' Section 8(c) and Section 8(c)(4) claims. During this trial, several matters arose to become the bases for the issues now on appeal. First, throughout the trial, Plaintiffs objected to Defendants' questions regarding whether Plaintiffs suffered economic harm from using Prosperity, whether Prosperity's loans were competitive in the market, and whether Prosperity gave the named Plaintiffs the best deal. Second, during closing arguments, Long & Foster's counsel stated that "I think the only thing I agree [with] for sure is that Long & Foster did refer the named plaintiffs to Prosperity. There's no dispute about that." J.A. 1686. Third, counsel for Prosperity and Wells Fargo stated that the named Plaintiffs received financially beneficial deals in their loans. And finally, during his closing argument, Wells Fargo's counsel implied that Plaintiffs' attorney had a financial interest in the case.

After the district court instructed the jury and deliberations concluded, the jury returned a verdict in favor of Defendants. Specifically, the jury decided that Plaintiffs did

9

not prove by a preponderance of the evidence that Prosperity was a sham and not a bona fide provider of settlement services. In addition, the jury decided that Plaintiffs did not prove that Long & Foster referred or affirmatively influenced Plaintiffs to use Prosperity or that Prosperity referred or affirmatively influenced Plaintiffs to use Wells Fargo for settlement services. Accordingly, the district court entered judgment in favor of Defendants.[6]

Thereafter, Plaintiffs moved for a new trial under Federal Rule of Civil Procedure 59(a). The district court denied the motion and issued an order entering judgment "in favor of Defendants and against Named Plaintiffs on Named Plaintiffs' claims under § 8(a) of [RESPA], 12 U.S.C. § 2607[,]" i.e., claims that had not yet been tried (as opposed to the Section 8(c) claims, which had been tried). Appellants' Br. at Addendum 31. Plaintiffs timely appealed.

## II.

Plaintiffs first challenge the district court's rejection of their Rule 59(a) motion for a new trial. "A district court's denial of a motion for a new trial is reviewed for abuse of

---

[6] The district court later entered an amended judgment that reflected the exclusions from the class that were discussed above.

discretion, and will not be reversed 'save in the most exceptional circumstances.'" FDIC v. Bakkebo, 506 F.3d 286, 294 (4th Cir. 2007) (quoting Figg v. Schroeder, 312 F.3d 625, 641 (4th Cir. 2002)).

Rule 59 states that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). We have recognized that, under this rule, the district court must

> "set aside the verdict and grant a new trial[] if . .
> . (1) the verdict is against the clear weight of the
> evidence, or (2) is based upon evidence which is
> false, or (3) will result in a miscarriage of justice,
> even though there may be substantial evidence which
> would prevent the direction of a verdict."

Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)).

Plaintiffs brought three RESPA claims: Section 8(a), Section 8(c) and Section 8(c)(4) claims. The Section 8(c) and Section 8(c)(4) claims proceeded to trial, but the Section 8(a) claims did not but were instead adjudicated after trial. Appellants' Rule 59 motion is unusual in that Plaintiffs are not seeking a new trial for the purpose of re-trying their Section

11

8(c) claims. Instead, they are seeking "only a <u>first</u> trial on their [Section] 8(a) claims[.]" Appellants' Br. at 49.

Plaintiffs' Rule 59(a) motion specifically challenged the jury's negative answer to Question Three of the verdict form: "Have Plaintiffs proved, by a preponderance of the evidence, that Long & Foster Real Estate, Inc. referred or affirmatively influenced the Plaintiffs to use Prosperity Mortgage Company for the provision of settlement services?" J.A. 1212. Because Plaintiffs' Section 8(a) claim also required Plaintiffs to prove that Long & Foster referred Plaintiffs to Prosperity, the district court held that the jury's finding on this issue undermined both the Plaintiffs' tried and untried RESPA claims. Plaintiffs thus seek to overturn the jury's finding on this question and attain a trial on the Section 8(a) claims.

On appeal, Plaintiffs make two arguments for reversal of the district court's denial of their Rule 59 motion: 1) Long & Foster's counsel made a judicial admission that removed the referral issue from dispute, and 2) the jury's verdict was against the clear weight of evidence. We disagree with both.

A.

First, Plaintiffs argue that the district court abused its discretion by finding that Long & Foster's counsel's statement

12

in closing argument that Long & Foster referred the named Plaintiffs to Prosperity was not a judicial admission.

A judicial admission is a representation that is "'conclusive in the case'" unless the court allows it to be withdrawn. Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 264 (4th Cir. 2004) (quoting Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (further defining judicial admissions as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them")). Judicial admissions include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." Id. at 264-65. "[A] lawyer's statements may constitute a binding admission of a party[]" if the statements are "'deliberate, clear, and unambiguous[.]'" Fraternal Order of Police Lodge No. 89 v. Prince George's Cnty., Md., 608 F.3d 183, 190 (4th Cir. 2010) (quoting Meyer, 372 F.3d at 265 n.2). "We review the district court's determination as to whether a particular statement constitute[d] a judicial admission . . . [for] abuse of discretion." Meyer, 372 F.3d at 264 (quotations omitted) (alterations in original).

In this case, during closing arguments, Long & Foster's counsel stated:

> First of all, at the outset, I would just ask you to ask yourselves if your assessment of the witnesses, of the documents, of their credibility, of what you heard in this case really matches what [Plaintiffs' counsel] told you. It's your job to weigh what occurred here.
>
> And frankly, I'm sure you won't be surprised, I have a lot of differences, and differences of recollection, differences in what was said.
>
> I think the only thing I agree way [sic] for sure is that Long & Foster did refer the named plaintiffs to Prosperity. There's no dispute about that.

J.A. 1686. Plaintiffs did not object, move for judgment as a matter of law, or seek to amend the jury verdict form after this alleged admission. After deliberations, the jury found that Plaintiffs had not proven that Long & Foster referred or affirmatively influenced Plaintiffs to use Prosperity. Plaintiffs then moved for a new trial, arguing for the first time after the jury's verdict, that counsel's statement during argument had constituted a judicial admission that Long & Foster had referred the plaintiffs to Prosperity.

The district court recognized that "[t]aken alone, [Long & Foster's counsel's] statement could possibly be considered an admission[,]" but rejected the motion for a new trial. J.A. 1353. The district court explained that

> giving due regard to the context of this litigation and considerations of fairness, the Court is troubled by the fact that the supposed admission is being raised for the first time post-verdict. While the time between [Long & Foster counsel's] statement and submission of the case to the jury was indeed short, the Court believes it was a sufficient amount of time for Plaintiffs to reconsider the task with which the jury would be charged in light of counsel's statement,

14

and to raise the supposed admission with the Court and with counsel. Obviously, Plaintiffs did not and, . . . the conclusion which urges itself at this time is that it occurred to no one at the trial that the remarks in question constituted an admission of the nature here urged. As a result, the Court believes it would be decidedly unfair and inconsistent with the purpose of motions under Rule 59 to allow Plaintiffs to do now, what they failed to do at trial.

J.A. 1353-54 (quotation marks, citations, and footnote omitted).

On appeal, Plaintiffs claim that this ruling was an abuse of discretion. We disagree. The record reflects that Plaintiffs had ample opportunity to raise the alleged admission but failed to do so. And the fact that it occurred to no one at trial that this isolated remark constituted a binding admission undercuts the notion that the statement was sufficiently deliberate and clear so as to have preclusive effect. In the face of Plaintiffs' failure to undertake any steps whatsoever at trial to have the statement deemed an admission or have the issue removed from the jury's province, it simply cannot be said that "an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994) (quotation marks omitted). Accordingly, we conclude that the district court did not abuse its discretion on this issue.

15

B.

Second, Plaintiffs contend that the district court abused its discretion by denying their motion for a new trial because the jury's verdict was against the clear weight of the evidence. While a party is not required to make a Rule 50 motion for judgment as a matter of law before moving for a new trial, when, as here, a party does not do so, "our scope of review is exceedingly confined, being limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice." Bristol Steel, 41 F.3d at 187 (quotation marks and citations omitted); accord Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

In other words, when "reviewing the evidence through the medium of a motion for a new trial after failure to move for judgment as a matter of law, we do not review sufficiency in its technical sense. What is at issue is whether there was an absolute absence of evidence to support the jury's verdict." Bristol Steel, 41 F.3d at 187 (quotation marks and citations omitted). Therefore, we must affirm the district court's decision unless there was "an absolute absence of evidence" supporting the jury's finding that Plaintiffs did not prove by a preponderance of the evidence that Long & Foster referred or

16

affirmatively influenced them to use Prosperity for settlement services.  Id.

Under RESPA's regulations,

[a] referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.

12 C.F.R. § 1024.14(f)(1) (2011).  The district court provided this definition to the jury during its final instructions.

We cannot say that there is an "absolute absence of evidence" supporting the jury's determination that Long & Foster did not refer the plaintiffs to Prosperity.  For example, Long & Foster executive George Eastment testified that it was Long & Foster's independently contracted real estate agents who were responsible for referring Plaintiffs to Prosperity, not Long & Foster itself.  Specifically, he stated that Long & Foster's "contact is not with the buyers and sellers," rather the "independent contractors who are agents . . . have the contact with the buyers and sellers[.]"  J.A. 1495.  He later reiterated that "[a]gents who were affiliated with Long & Foster made the referral.  The company itself did not make the referral."  J.A. 1511.

17

Further evidence supported Defendants' theory that the actions of Long & Foster real estate agents did not qualify as a referral under RESPA because Long & Foster's agents' actions did not "affirmatively influenc[e]" Plaintiffs to choose Prosperity. 12 C.F.R. § 1024.14(f)(1). For example, Long & Foster real estate agent Konstantino Tsamouras testified that Prosperity was not the only lender he recommended to Plaintiffs. The record supports this testimony, reflecting that Tsamouras recommended loan officers from both Prosperity and Bank of America to the Alboroughs, and that Tsamouras referred other individuals to First Mortgage. Further, the named Plaintiffs testified that they shopped around and conducted an independent search for a lender before deciding to use Prosperity and selected Prosperity because it offered the best deal. See J.A. 1526-30, 1563-69, 1570-71.

Undoubtedly, the evidence would have supported a verdict going the other way. But in light of Plaintiffs' failure to move for judgment as a matter of law before the jury did its job and the ensuing high bar Plaintiffs face, we cannot conclude that there was an "absolute absence of evidence" supporting the jury's verdict. Bristol Steel, 41 F.3d at 187. We therefore must affirm the district court's denial of the Plaintiffs' motion for a new trial.

18

Plaintiffs also challenge the district court's decision to admit testimony regarding the economic harm, or lack thereof, that they suffered due to using Prosperity's settlement services. "We review a trial court's rulings on the admissibility of evidence for abuse of discretion, and we will only overturn an evidentiary ruling that is arbitrary and irrational." United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011) (quotation marks omitted). See also United States v. Myers, 589 F.3d 117, 123 (4th Cir. 2009). To be admissible, evidence must be relevant – a "low barrier" requiring only that evidence be "worth consideration by the jury[.]" United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003) (quotation marks omitted).

Under Federal Rule of Evidence 403, determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, or confusion of the issues is within the district court's broad discretion. United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998). We will not overturn a Rule 403 decision "except under the most extraordinary of circumstances, where [a trial court's] discretion has been plainly abused." Id. (quotation marks omitted) (alteration in original). When reviewing the district court's decision to admit evidence under Rule 403, "we must look

19

at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Udeozor, 515 F.3d 260, 265 (4th Cir. 2008) (quotation marks omitted).

Before trial, the district court excluded Dr. Courchane's expert testimony regarding Prosperity's loan prices and all other testimony, evidence, or argument about whether Plaintiffs suffered economic injury. The district court explained that Plaintiffs were not required to establish economic injury to prove their RESPA claims and that the probative value of such evidence would be minimal. The district court warned that "if Plaintiffs open the door to evidence of economic injury during their case-in-chief, [the court] will reconsider this decision." J.A. 1120.

During trial, however, the district court ruled that it would allow Defendants to question Plaintiffs about whether they "shopp[ed] around for their mortgages" and whether they chose Prosperity because it offered "better rates[,] lower costs, or better service" than its competitors. J.A. 1162 (quotation marks omitted). The district court explained that such questioning was relevant as background information on the Plaintiffs' claims, but it cautioned that Defendants would not be allowed to suggest from the Plaintiffs' "decisions to shop around or their decision to choose Prosperity because of its

20

rates and/or fees" that Plaintiffs consequently did not suffer any economic harm. Id.

At trial, over Plaintiffs' objections, Defendants asked witnesses about how Prosperity's prices compared with other lenders. See J.A. 1538, 1568-1571, 1586-92, 1638-39. Defendants' witnesses testified that, generally, Prosperity offered lower prices on loans than Wells Fargo. See J.A. 1592, 1638-39. In addition, the district court allowed Defendants to ask whether Plaintiffs suffered financial harm due to their involvement with Prosperity. See J.A. 1536-38, 1570. Specifically, during cross-examination, Wells Fargo's defense counsel asked Minter: "You have absolutely no evidence that by doing your loan with Prosperity, and having Prosperity sell its loan on the secondary market to Wells Fargo, that you incurred any financial consequence one way or the other, negatively?" J.A. 1538. Minter responded that she did not know and had not looked at Wells Fargo's rates. Id. Likewise, during cross-examination, Prosperity's defense counsel asked Jason Alborough if he decided to use Prosperity because he thought Prosperity was "giving [him] the best deal[,]" to which Jason Alborough responded that Prosperity's pricing was "[o]ne of the factors" that led him to use Prosperity. J.A. 1570.

During Minter's cross-examination, the district court distinguished between allowing such questioning on direct

21

examination and allowing it on cross-examination, stating "the fact of whether she has or has not suffered any economic damage is not off the table with respect to cross-examining her[,]" although "[i]t's off the table with respect to any element to be required to prove the plaintiffs' case, and I'll instruct the jury in that respect." J.A. 1536. During Alborough's cross-examination, the district court allowed questioning on whether Alborough had received the "best deal for [his] loan[,]" saying "He says he felt cheated, I think this cross-examination is appropriate." J.A. 1570. The district court later explained that:

> From my perspective, the evidence has not indicated from individual plaintiffs any financial loss. To the contrary, particularly with regard to Mr. Alborough, who was grilled at length as to why he's here as a plaintiff and never uttered a word that sounded to me as though there was any financial loss involved.
> Nor did that come from Miss Minter, in addition to which, as I've already indicated, the jury's going to be instructed that financial loss is not an issue for them to be concerned about.
> So simply put, the door has not been opened, in my view. The ruling will be as before. Motion in limine sustained.

J.A. 1640.

The district court's decision to allow Defendants to adduce general testimony from their own witnesses and cross-examination testimony about Prosperity's competitive loan pricing did not constitute an abuse of discretion. In particular, that

22

testimony was relevant to determining whether Prosperity was a sham business and whether Prosperity independently priced its loans to be competitive in the market rather than being exclusively controlled by Wells Fargo and Long & Foster.

Moreover, any potential prejudicial impact was mitigated by the district court's jury instructions that stated:

> [P]laintiffs are not required to prove they were overcharged by any of the defendants in connection with their loans, or that they incurred any financial detriment, or that they've suffered any poor service as a result of their dealings with the defendants.
> Instead, for the plaintiffs to succeed on their claims, they're only required to prove that Prosperity was a sham because it was not a bona fide provider of settlement services.

J.A. 1733.

Given the relevance of this line of questioning to the Plaintiffs' claims and the district court's mitigating instructions to the jury in the context of the trial as a whole—which lasted seventeen days and had over twenty witnesses—the district court's decision to allow this limited questioning about Plaintiffs' economic harm was not an abuse of discretion. We therefore affirm these evidentiary rulings.

IV.

Finally, Plaintiffs contend that the district court erroneously failed to strike, or instruct the jury to disregard, Defendants' improper statements during closing arguments. We

23

review this issue for abuse of discretion. See Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 195, 197 (4th Cir. 1982), rev'd on other grounds, 712 F.2d 899 (1983) (en banc); see also United States v. Baptiste, 596 F.3d 214, 226 (4th Cir. 2010). This standard is met only where there is a "reasonable probability" that the conduct improperly influenced the jury in reaching its verdict, i.e., the conduct "effective[ly] subver[ted] . . . the jury's reason or . . . its commitment to decide the issues on the evidence received and the law as given it by the trial court." Arnold, 681 F.2d at 197.

In analyzing this issue, we recognize that this question is "one of judgment to be exercised in review with great deference for the superior vantage point of the trial judge and with a close eye to the particular context of the trial under review[.]" Id. On appeal, we must consider the "'totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.'" Id. (quoting City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980)).

Courts have found that the abuse of discretion standard was met where attorney misconduct permeated the trial and repeatedly

24

exposed the jury to improper comments. See Bufford v. Rowan Cos., Inc., 994 F.2d 155, 157 (5th Cir. 1993); City of Cleveland, 624 F.2d at 758 (finding that "improprieties permeated the entire trial, from opening statement through closing argument"). By contrast, where the improper comments were an isolated occurrence during an opening statement in the course of a three-week trial, this Court found no abuse of discretion and described the absence of prejudice as "self-evident." Ins. Co. of N. Am., Inc. v. U.S. Gypsum Co., Inc., 870 F.2d 148, 154 (4th Cir. 1989).

In this case, defense counsel's remarks that Plaintiffs' counsel was putting on a "sham lawsuit" and had "an interest in the outcome of this case" were inappropriate. J.A. 1700; Arnold, 681 F.2d at 196-97 (finding that "tasteless and irrelevant" comments about opposing counsel "were improper under applicable professional standards and justified censure if for no other reason than to preserve some degree of respect among the attending public for the profession and the process"). However, these improper remarks about Plaintiffs' counsel were made during closing argument only, rather than throughout the course of the seventeen-day trial. In the context of the full trial, it is unlikely that these comments alone influenced the jury in reaching its verdict. Moreover, defense counsel's disparaging reference to Plaintiffs' counsel did not have a

25

direct bearing on the real issues before the jury:  whether Prosperity was a sham provider of settlement services and whether Long & Foster referred Plaintiffs to Prosperity.

The district court charged the jury that the "statements, the objections, or the arguments that were made by counsel are not evidence in the case."  J.A. 1731.  Further, the improper comments did not permeate the trial, but rather were isolated, mildly offensive remarks made during closing arguments.  Thus, it is not reasonably probable that such comments subverted the jury's commitment "to decide the issues on the evidence received and the law as given it by the trial court."  Arnold, 681 F.2d at 197.  Accordingly, we conclude that the district court did not abuse its discretion in refusing to strike, or instruct the jury to disregard, the statements.


V.

For the foregoing reasons, we affirm the judgment of the district court.[7]

AFFIRMED

---

[7] Plaintiffs also challenge the district court's decision to dismiss Binks's Section 8(a) claims along with Minter's and the Alboroughs' claims.  In response, Defendants contend that Plaintiffs abandoned Binks' Section 8(a) claims.  Plaintiffs did not challenge this dismissal below, and the district court had no opportunity to rule on it.  Such a decision should have been made in the district court in the first instance, and we therefore do not address it.

26