**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1974**

LEGACY DATA ACCESS, INC., a Georgia corporation; DIANNE M. PETERS, a
Georgia resident,

Plaintiffs – Appellees,

v.

CADRILLION, LLC, a North Carolina limited liability company; LEGACY DATA
ACCESS, LLC, a North Carolina limited liability company; JAMES YUHAS, a
North Carolina resident,

Defendants - Appellants,

Appeal from the United States District Court for the Western District of North Carolina, at
Charlotte.  Frank D. Whitney, District Judge.  (3:15-cv-00163-FDW-DCK)

Argued:  December 7, 2020                           Decided:  January 5, 2021

Before GREGORY, Chief Judge, and MOTZ and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Mark Hiller, ROBINSON, BRADSHAW & HINSON, P.A., Chapel Hill,
North Carolina, for Appellants.  John Robert Buric, JAMES, MCELROY & DIEHL, P.A.,
Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John R. Wester, Demi Lorant
Bostian, Andrew R. Wagner, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte,
North Carolina, for Appellants.  Preston O. Odom III, John R. Brickley, JAMES,
MCELROY & DIEHL, P.A., Charlotte, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This diversity contract dispute returns to us after remand to the district court.  *See Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 162 (4th Cir. 2018) (*Legacy Data I*).  In *Legacy Data I*, we reversed the judgment of the district court as to conversion and punitive damages and remanded for a new trial on damages for breach of contract.  *Id.* at 164–68.  We also vacated the district court's grant of attorneys' fees and remanded for the court to reassess the proper amount of fees in light of the outcome of the new trial.  *Id.* at 168–69.  On remand, the jury determined that Legacy Data Access, Inc. ("Legacy Georgia") and its owner Dianne Peters (now Dianne Disser) (collectively "Plaintiffs") were entitled to $1,591,094 in damages.  The court awarded them $1,073,597 in attorneys' fees. Cadrillion, LLC ("Cadrillion"), Legacy Data Access, LLC, and Cadrillion manager James Yuhas (collectively "Defendants") appeal, challenging the district court's evidentiary rulings and the attorneys' fee award.  For the reasons set forth within, we affirm.

I.

We first briefly describe the proceedings resulting in our initial opinion in this case and then set forth those leading to the present appeal.

A.

Plaintiffs entered into an Asset Purchase Agreement (the "Agreement") with Defendants.  The Agreement provided that Cadrillion would purchase Legacy Georgia's assets by making two separate payments:  1) an amount to be paid on the closing date of the Agreement, and 2) a "Deferred Purchase Price" to be paid upon certain triggering events, including the exercise of a "Call Option."  The Agreement included a complex

3

formula to calculate the Deferred Purchase Price, also known as the "Call Price." On January 15, 2015, Cadrillion exercised the Call Option but never paid the Call Price. *See Legacy Data I*, 889 F.3d at 162–63.

## B.

Plaintiffs filed suit in April 2015, alleging claims for breach of contract, conversion, abuse of process, and unfair and deceptive trade practices. *Id*. at 163. At the trial on liability and compensatory damages, the jury found Cadrillion liable for breach of contract and awarded $256,500 in compensatory damages. *Id*. at 162. The jury also found Cadrillion and Yuhas liable on the conversion claim and awarded $1,499,999 in compensatory damages. *Id*. The district court granted judgment as a matter of law to all Defendants on the abuse of process claim, and the jury rejected Plaintiffs' unfair and deceptive trade practices claim. *Id*. At a second trial on the question of punitive damages, the jury awarded Disser a total of $3 million in punitive damages. *Id*. Following post-trial motions, the court reduced the compensatory damages award based on the conversion claim to $460,406 and eliminated the compensatory damages award on the breach of contract claim as double recovery. *Id*. at 163. The court reduced the punitive damages to a total of $1.38 million, granted Plaintiffs an award of pre- and post-judgment interest, and awarded Plaintiffs $743,297 in attorneys' fees against Cadrillion. *Id*.

## C.

On appeal, we affirmed the district court's judgment as to the abuse of process and unfair and deceptive trade practices claims, but reversed the judgment on the conversion claim and punitive damages. *Id*. at 171. Defendants conceded liability as to breach of

4

contract, *id*. at 163, but we concluded that the jury award on this claim was contrary to the record evidence and remanded for a new trial on the appropriate measure of contract damages. We explained that, "[s]ince Plaintiffs claimed that Cadrillion breached the Agreement by not paying the Call Price, the appropriate measure of damages would naturally be equal to the Call Price." *Id*. at 168. We remanded for a new trial to recalculate the Call Price because Defendants' expert had valued the Call Price "at somewhere between $548,227 and $953,102" and Plaintiffs' expert "valued the Call Price at $1,499,999," and so it "could not be as low as the $256,500 awarded by the jury." *Id*.

As to attorneys' fees, we observed that the Agreement contains a reciprocal attorneys' fees provision. *Id*. Neither party challenged the applicability of the provision to this dispute on appeal. However, North Carolina law requires that the fee award reflect "the results obtained" and the "extent to which the party seeking attorneys' fees prevailed in the action." N.C. Gen. Stat. § 6-21.6(c)(1), (11). Because both of these factors might have substantially changed on remand, we vacated the district court's grant of attorneys' fees and remanded for the court to reassess the appropriate fee award after a new trial. *Id*. at 169.

On remand, the jury found Plaintiffs entitled to recover $1,591,094 in damages and the court determined Cadrillion is liable to Plaintiffs for $1,073,597 in attorneys' fees.

II.

Initially, we address Cadrillion's claims that the district court improperly permitted Plaintiffs to introduce evidence of Cadrillion's prior calculations of the Call Price, entitling Cadrillion to a new trial.

5

We review the district court's evidentiary rulings and denial of Cadrillion's motion for a new trial for abuse of discretion. *Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2017); *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014). "[S]ave [] the most exceptional circumstances," we will not grant a new trial. *Minter*, 762 F.3d at 346. We will order a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Id.*

Cadrillion contends that the prior Call Price calculations were the subject of settlement negotiations and therefore inadmissible under Rule 408. *See* Fed. R. Evid. 408 (barring evidence of the "offering" of a compromise "to prove or disprove the validity or amount" of the claim). The mandate rule bars this claim. The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived." *S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004). Here, prior to the first trial, the district court denied Defendants' motion *in limine* to exclude the prior calculations under Rule 408, and overruled Defendants' related standing objection. Defendants did not contest this ruling in the first appeal.

Where "an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992). This is true regardless of whether the issues were "expressly or impliedly decided by the appellate

6

court" in the first instance.  *S. Atl. Ltd. P'ship of Tennessee*, 356 F.3d at 584 (quotations omitted).  We therefore decline to consider Cadrillion's Rule 408 claim now.

Cadrillion also argues that its prior calculations of the Call Price are not relevant. The prior calculations vary significantly and Cadrillion contends that Plaintiffs only sought to introduce them to make Cadrillion look like a "bad actor."  Appellees' Br. at 11, 15.  We recognize that Cadrillion might have preferred the jury not know the full range of its prior Call Price calculations, but that does not render the calculations irrelevant.  *See* Fed. R. Evid. 401 ("Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").  Defendants' own expert relied on the most significant component of the prior calculations (a $225,040 overhead allocation deduction) as part of the calculations he presented to the jury.  The prior calculations were also relevant to fact witness credibility, as both Disser and Scott Peters, Legacy Georgia's transactional counsel and part-owner, testified that they received multiple calculations from Cadrillion before it executed the Call Option.  And the Agreement required that these calculations be made in "good faith."  Relevancy is "a low barrier requiring only that evidence be worth

consideration by the jury." *Minter*, 762 F.3d at 349. The prior Call Price calculations easily meet this standard.[*]

In any event, even if the district court erred in ruling on the prior Call Price calculations, Cadrillion has not demonstrated that any error was "so grievous as to have rendered the entire trial unfair." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017). To the contrary, the $1,591,094 verdict was within the range of credited testimony from each side's experts ($1,039,013 from Defendants and $1,676,435 from Plaintiffs). *Cf. Legacy Data I*, 889 F.3d at 168 ($256,500 contract damages award from the first trial required reversal because it was "substantially *below* the range of the credited testimony"). Accordingly, Cadrillion has failed to establish evidentiary errors sufficient to justify a new trial.

### III.

Defendants' arguments with respect to attorneys' fees also fail. Defendants first contend that the Agreement's fee provision is unenforceable because it is contained in a section of the Agreement related to enforcement of the noncompete and confidentiality provisions, rather than in the section related to expenses.

---

[*] For these reasons, we also reject Cadrillion's contention that Plaintiffs offered Yuhas's testimony regarding his Call Price calculations solely for impeachment purposes. The premise of this argument — that neither party relied on the prior calculations — is incorrect. Yuhas was the source of the $225,040 overhead allocation deduction relied upon by Defendants' expert. The district court therefore did not err in permitting the testimony.

Cadrillion's Rule 403 argument similarly fails. First, we have doubts as to whether Cadrillion preserved its argument that the danger of unfair prejudice substantially outweighed the probative value of the prior calculations. Second, we will only overturn a Rule 403 decision under the most extraordinary of circumstances. *Minter*, 762 F.3d at 349. Cadrillion offers no such circumstances here.

8

The mandate rule again bars our review of this argument. Following the first trial, the district court determined that the "reciprocal attorneys' fees provision" in the Agreement applied to this dispute. The parties did not challenge this ruling on the first appeal, and we remanded the fee issue for recalculation pursuant to that provision. *Legacy Data I*, 889 F.3d at 168. Although the mandate rule permits us to correct "a blatant error" under "extraordinary circumstances," *United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993), no manifest error has occurred here. By the fee provision's own terms, it applies to "any action, suit or arbitration proceeding arising out of or relating to [the Agreement] or any breach or alleged breach thereof." Defendants had the opportunity to litigate this issue following the first trial. We decline to resurrect it now.

IV.

Defendants make two additional claims with respect to attorneys' fees. First, they contend that they, too, are entitled to attorneys' fees for the claims they successfully litigated in the prior trial and appeal. Second, they argue that the district court's fee award to Plaintiffs failed to distinguish sufficiently between claims that Plaintiffs won and claims that they lost. Our careful review of the record, the district court's opinion, and the arguments of counsel persuades us that these contentions are totally without merit. Accordingly, on these claims we affirm on the basis of the thorough and well-reasoned opinion of the district court. *Peters v. Cadrillion, LLC*, No. 3:15-CV-00163, 2019 WL 3756391, at *3–7 (W.D.N.C. Aug. 8, 2019).

9

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.