# COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia


VIRGIL NAFF, JR.

v.      Record No. 0589-23-3

SARA LOU FACKINA                                    MEMORANDUM OPINION* BY
                                                       JUDGE DANIEL E. ORTIZ
VIRGIL ATLEE NAFF                                         MAY 28, 2024

v.      Record No. 0590-23-3

SARA LOU FACKINA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike Jr., Judge

Sidney H. Kirstein for appellants.

Kathleen T. Allen (Glenn Robinson Cathey Memmer & Skaff, on
brief), for appellee.


This case stems from Sara Lou Fackina's vehicle colliding with Virgil Naff, Jr.'s

("father") Chevrolet Suburban vehicle with Virgil Atlee Naff ("son") as a passenger. Following

a trial, the jury returned a zero-dollar verdict. The Naffs argue the trial court erred by not setting

aside the verdict because Fackina both admitted liability and judicially admitted she caused the

Naffs' injuries. They further claim the trial court instructed the jury to only consider the amount

of damages and that zero does not qualify as an amount. As Fackina did not make a judicial

admission, the jury instructions allowed a zero-dollar verdict, and the verdict is based on

sufficient evidence, we affirm the trial court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On November 17, 2014, in Bedford County, Fackina's vehicle struck the side of father's Chevrolet Suburban vehicle. Son was in the passenger seat, and two Sea-Doos, personal watercraft equipment, were connected to the Naffs' vehicle. As a result of the contact with Fackina's car, the Naffs were propelled off the road about 50 feet into "a row of little elm trees and just came to an abrupt stop." Both Naffs climbed over the back seat to exit the Suburban. Three unchallenged exhibits demonstrated the damage to the Suburban's left side and the Sea-Doos laying on the ground.

Father testified that "we were shaken up a bit" and that he had "some bruising and few cuts and stuff like that" that caused soreness. This soreness went away after a few days or week. He further testified that his head hit the glass and the door jam. After a week, "ten days, or at some point in time," father noticed that it hurt to turn his neck. He stated that he had present and daily neck pain that woke him up on a nightly basis. Father claimed that he was limited in turning his neck to the left and the right making it difficult to drive and perform his job. He testified that prior to this accident he had no neck pain. Debbie Naff ("mother") and Randy DeJarnette, an employee of father, both corroborated that he had no neck pain prior to the accident. Based on a conversation with a therapist at the YMCA shortly after the accident, father began to use a traction device at home for his neck pain.

On cross-examination, father testified that he did not see a doctor after the accident and that he had previously described the "cuts" from the accident as "scratches." He stated that he did not remember if his neck pain began a week, ten days, or two weeks after the accident. Father claimed it hurt to turn his head in both directions. But he admitted that he had previously

---

[1] Because Fackina prevailed on the issue of damages, we view the facts in the light most favorable to her. *See Gilliam v. Immel*, 293 Va. 18, 20 (2017).

- 2 -

stated at a deposition "my neck is fine when I am looking to the right, but if I turn to the left I got very limited movement and it hurts when I try to move it." In July 2016, father told a doctor at Lynchburg Physicians Treatment Center that his neck pain was mainly on his left side. In 2017, father had a doctor's appointment at the University of Virginia ("UVA") and the doctor determined that his neck was supple. In June 2018, father spoke with Dr. Vollmer at UVA and told him he had left-side neck pain. When confronted about the lack of mention in his medical records of neck pain until July 21, 2016, father responded that it was "not totally true that I haven't discussed it with a doctor." Counsel implied father had an improper motive by highlighting that the lawsuit was filed on November 10, 2016, which was close in time to when he first discussed his neck pain with a doctor.

At the time of the accident, son was 14 and in middle school. Son testified that he was "shocked" by the accident and "jostled around in the car," that he hit his head on the window, and that hot coffee spilled on him. On the scene, son told a fireman he was okay, and he attended school that same day. He did not visit a doctor on the day of the accident. In the few days after the accident, he remembered being bruised, "having a knot" on his head, and being sore. Son stated that prior to the accident he had back pain caused by a congenital back issue: pars defect. Several days after the accident, he notified an increase in his back pain. He testified that following the accident he had to stop playing basketball, couldn't participate in physical education classes, and had problems sitting in class. He stated that his pain was on a "pretty daily basis" causing him to avoid lifting things.

Son testified that he had present pain radiating down his leg and that he didn't recall having this pain prior to the accident. He also stated, however, that prior to the accident, he went to a doctor's appointment at UVA for back pain and pain in his leg. Son conceded that a doctor advised him, prior to the accident, to not run or jump and referred him to physical therapy. But

son also testified that a doctor never told him prior to the accident not to play basketball. He did not recall if he discussed with a physical therapist injuring his back in the car accident. When asked if the first time he mentioned back pain from the accident was to his doctor in 2017, son stated that he was "not sure." After being asked if at UVA in February 2017 he had informed his doctor that he had fallen in 2013, been in the car accident in 2014, and recently fell in the bathtub, son stated that he did "remember something like that." On cross-examination, son agreed that he had imaging of his back taken in 2017 that showed no changes from his imaging from before the accident.

Father testified that son's back problems worsened after the accident. He also agreed that on October 10, 2014, prior to the accident, the doctors informed him and his wife that son should avoid high-impact exercises. Father stated that he did not recall if his son stopped basketball before or after the accident. Mother also testified that her son's back problems worsened after the accident. She stated that he had to stop basketball and had issues with gym class. Mother also conceded that on October 10, 2014, the doctor advised that her son should avoid impact activities as he could be paralyzed by a bad fall. Mother also affirmed that son had injured himself before the accident after falling from a swing.

In her opening statement, Fackina "accepted responsibility for causing the accident . . . [and] believe[d] the injuries were pretty minor that these folks received from the accident." Her counsel maintained "that this is a case that does not justify any sort of permanent injury or award of that type, just reasonable compensation as you see fit." In her closing statement, counsel again emphasized that she was "not going to try to minimize this accident, it wasn't minimal, it was definitely a moderate accident." Counsel additionally asserted that "[t]his was probably a scary accident. I suggest to you total award of not more than $5,000, $2,500 a piece for their pain and inconvenience would be appropriate." Finally, counsel for Fackina also argued to the

- 4 -

jury that she did not "believe [the Naffs] established that" their injuries were "proximate[ly] cause[d] [by] this accident."

After evidence was presented, the trial court considered the offered jury instructions. Instruction C, proposed by the Naffs, stated:

> The defendant has admitted that she is liable for any injury the plaintiffs received from the accident. Therefore, the only issue that you have to decide is the amount of damages the plaintiffs are entitled to recover. An admission of liability should not influence you in any way in considering the issue of damages.

Fackina's counsel objected to Instruction C and countered with the proffered Instruction 4. Instruction 4, which was the same as Model Jury Instruction 2.200 that, in pertinent part, stated that "the only issue that you have to decide is the amount of damages, *if any*, the plaintiffs are entitled to recover." (Emphasis added). The Naffs' counsel argued that "if any" should be removed because "it would be inappropriate to suggest to the jury that they don't have to award some amount of damages." Fackina's counsel asserted that it was possible for the jury to find that no injuries were sustained. The trial court disagreed and responded that it did not see the evidence supported a verdict "of no injury at all so I will give C as written" and refused Instruction 4.

Fackina's counsel also proposed Instructions 6 and 7 that explicitly stated that the jury should consider whether the Naffs' injuries were caused by the accident. The trial court similarly refused these instructions, after hearing objections, because it believed the evidence did not support a finding that the Naffs "were not injured at all by the accident. Extent of the injuries, that's for the jury to decide." After deliberation, the jury returned a zero-dollar verdict. The Naffs made a motion to set aside this verdict. The trial court denied the motion and stated that it "looks like to me my ruling that you had to return damages was wrong" and the "jury decided in this case the amount was zero." The Naffs appeal.

ANALYSIS

The Naffs argue that the trial court erred by refusing to set aside the jury's zero-dollar verdict because (1) Fackina admitted liability and made a judicial admission that the injuries were caused by the accident, and (2) Instruction C stated that the jury was only to determine the amount of damages and zero is not an amount. Based on this, the Naffs assert that the trial court should have awarded a new trial limited to damages only.

## I. Standard of Review

"[A] party who comes before us with a jury verdict approved by the trial court 'occupies the most favored position known to the law.'" *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992) (quoting *Pugsley v. Privette*, 220 Va. 892, 901 (1980)). "We will not set aside a trial court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Fruiterman v. Granata*, 276 Va. 629, 637 (2008) (quoting Code § 8.01-680). "[W]e are guided by the well-settled principles that a jury verdict must be sustained if there is any credible evidence to support it and that the evidence must be taken in the light most favorable to the party who received the jury verdict." *Sloan v. Thornton*, 249 Va. 492, 495 (1995). "A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017).

## II. Fackina Admitted Liability But Did Not Make a Judicial Admission

In terms of the Naffs' first argument, we begin with the general guidance found in *Gilliam v. Immel*, 293 Va. 18 (2017). The Supreme Court addressed the impact of an admission of liability, asserting that:

> An admission of liability is only an admission of negligence and causation. Therefore, in the context of an automobile accident case, an admission of liability relieves the plaintiff of the burden of proving that the defendant was negligent and that defendant's

- 6 -

negligence was a proximate cause of the accident. An admission of liability, however, does not admit compensable damage. Even a finding of liability does not require a finding of some compensable damage.

*Id.* at 26 n.7.

In *Ambiance Associates, Inc. v. Kilby*, 230 Va. 60 (1985), the Supreme Court refused to allow the withdrawal of a judicial admission of liability on appeal where the admission was "distinct, formal, [and] binding." *Id.* at 62-63. During trial, the defendant's attorney admitted to his client's liability, stating that "I think there's going to be a finding of liability against my client. Besides that, my client now wants me to do that." *Id.* at 61-62. *See also Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) ("Judicial admissions include 'intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law.'" (quoting *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004))).

Here, although Fackina's counsel admitted liability, she did not concede causation or damages. Instead, the burden remained on the Naffs to prove that their injuries were caused by the accident. *See Gilliam*, 293 Va. at 26 n.7. Fackina's counsel did state that the "injuries were pretty minor that these folks received from the accident" and suggested a monetary amount the jury could award. She also argued in closing, however, that the Naffs' injuries weren't caused by the accident. Thus, not only were Fackina's counsel's statements not a "distinct, formal, [and] binding" admission of causation or damages, *Ambiance Assocs., Inc.*, 230 Va. at 62-63, but in fact, they were "intentional and unambiguous" statements *denying* causation and damages, *Minter*, 762 F.3d at 347. Therefore, the Court is not persuaded by the Naffs' first argument.

### III. The Trial Court Correctly Instructed the Jury, and the Jury's Verdict Was Supported by Evidence

The Naffs next argue that the jury's verdict of zero damages is contrary to the jury instructions, verdict form, and law. In multiple personal injury cases, Virginia courts have declared that when a jury could have found the defendant's negligence during a car accident was not the cause of a plaintiff's injuries, a zero-damages verdict is permissible. *See Gilliam*, 293 Va. at 24-25 (affirming zero-dollar verdict where evidence of plaintiff's injuries was in conflict and dependent on witness testimony, plaintiff had no visible injuries after the accident, plaintiff offered no medical evidence supporting claims of injury, and plaintiff went to work the day after the accident); *Mastin v. Theirjung*, 238 Va. 434, 437-38 (1989) (finding trial court did not err in upholding zero verdict where jury could have found plaintiff was feigning injuries, no medical evidence was offered, plaintiff did not consistently describe injuries or her work history after the accident, and plaintiff attended concert she was en route to before the accident); *Vilseck v. Campbell*, 242 Va. 10, 14 (1991) (affirming zero verdict where evidence was self-rebutted because plaintiff said he both was and wasn't injured in accident, further plaintiff did not tell trooper after accident he was injured, did not see a doctor after accident, and there was no causal connection between the accident and development of tumor); *Shumate v. Mitchell*, 296 Va. 532, 550 (2018) (affirming zero verdict where evidence of plaintiff's injuries was conflicting and dependent on the jury's weighing of witness credibility, and plaintiff had long history of back and neck pain).

In both *Gilliam* and *Shumate*, the Supreme Court analyzed the jury instructions and found the jury was properly instructed that they were not required to find damages for the plaintiff and that the burden was on the plaintiff to recover damages. *Gilliam*, 293 Va. at 26 n.8 (jury was correctly instructed to decide "the amount of damages, *if any*, the plaintiff is entitled to recover" and that "[t]he burden is on the plaintiff to prove" damages were caused by the defendant with

sufficient information to make a "reasonable estimate" of damages (alteration in original));

*Shumate*, 296 Va. at 551 (jury was correctly instructed to determine "the amount of damages, *if any*, the plaintiff is entitled to recover").

Here, the burden was on the Naffs to prove causation and the jury either found they did not meet that burden, or the jury was unable to estimate damages based on the Naffs' insufficient evidence. Like in *Gilliam*, the evidence of father's and son's injuries "was not only in conflict, but dependent upon the credibility and weight of the witness testimony." 293 Va. at 24. Jurors "are the sole judges of the weight and credibility of the evidence and have the right to discard or accept the testimony, or any part thereof, of any witness when considered in connection with the whole evidence before them." *Smith v. Wright*, 207 Va. 482, 486 (1966). In terms of father's injuries, the Naffs concede that they did not call any medical witnesses on the nature, extent, and duration of his neck pain, just as in *Gilliam* and *Mastin*. Though father received care at the YMCA, he never saw a medical doctor specifically for his neck pain. When a doctor did examine his neck years after the accident, the doctor determined that it was supple. Father did not present any medical bills concerning his injury. He testified that it hurt to turn his head to both sides which contradicted his earlier declarations that it only hurt to turn his neck to the left side. Further, the jury could have accepted Fackina's argument that father had an improper motive in bringing up his neck pain two years after the accident, which was close in time to the lawsuit.

In terms of son's injuries, at the accident he stated that he was okay and attended school the same day, similar to *Mastin*, where the plaintiff continued to a concert after the accident. *See* 238 Va. at 436. Again, no medical bills were introduced, no medical witnesses testified, and son did not see a doctor immediately after the accident. A doctor did advise son to stop playing basketball due to his back pain, but this occurred before the accident. Most significantly, he had

a pre-existing injury like in *Shumate*, and the jury could have found his back pain stemmed from this as opposed to the accident. *See* 296 Va. at 550-51.

The jury was instructed with the Naffs' proposed instructions. Although the trial court believed the evidence demonstrated that Fackina's negligence caused the Naffs' injuries and granted or denied the proposed jury instructions on that basis, causation was for the jury to determine, as stated in the instructions. Instruction D, submitted by the Naffs, specified that

> [t]he burden is on the plaintiff to prove by the greater weight of the evidence each item of damage he claims and to prove that each item was caused by the defendant's negligence. He is not required to prove the exact amount of his damages, but he must show sufficient facts and circumstances to permit you to make a reasonable estimate of each item. If the plaintiff fails to do so, then he cannot recover for that item.

Instruction G instructed the jury "you shall find your verdict in favor of the plaintiff, Virgil Naff, Jr. and in determining the damages to which he is entitled, you shall consider any [injuries or inconveniences] which you believe by the greater weight of the evidence was caused by the negligence of the defendant." Based on these instructions and the evidence presented, the jury could have found that Fackina's negligence did not cause the Naffs' injuries or that the Naffs did not present sufficient facts and circumstances to permit the jury to make a reasonable estimate of damages. It is true that, here, unlike in *Gilliam* and *Shumate*, Instruction C omitted the phrase "if any" and that the Supreme Court emphasized this phrase in both cases. The Naffs suggest that the removal of "if any" compels a jury to award him some dollar figure. This premise is undercut by the simple conclusion that an amount of damages can include "zero." Instruction D requires a jury to return a zero-dollar verdict in the event that the Naffs failed to satisfy their burden. By following the instructions, the jury properly interpreted zero as an appropriate amount given the evidence they heard. As a result of the totality of the jury instructions, the

evidence presented, and the strong presumption against overturning a jury verdict, the omission of "if any" did not compel the jury to return a verdict in a dollar amount more than zero.[2]

## CONCLUSION

Because there was no judicial admission to any damages, the jury instructions permitted a determination of a zero-dollar verdict, and the jury verdict is supported by the evidence, the trial court did not abuse its discretion in denying the motion to set aside the verdict. The trial court's judgment is affirmed.

*Affirmed.*

---

[2] Based on this determination, we need not reach Fackina's assignments of cross-error.