# Richmond

## ALLEN REED DIGGS v. MILDRED ELIZABETH BOYD LAIL.

June 13, 1960.

Record No. 5083.

Present, All the Justices.

The opinion states the case.

*G. Kenneth Miller* (*John G. May, Jr.,* on brief), for the plaintiff in error.

*Israel Steingold,* for the defendant in error.

Eggleston, C. J., delivered the opinion of the court.

Mildred Elizabeth Boyd Lail, sometimes hereinafter called the plaintiff, while riding as a passenger in a car driven by Allen Reed Diggs, sometimes hereinafter called the defendant, was injured when that vehicle ran into the rear of another owned by Producers Cooperative Exchange, Inc., and driven by Harry H. Holmes. At the time of the collision the Porducers vehicle was following another driven by Robert C. Hatchett, Jr., and each of the vehicles except that driven by Diggs had stopped in a line of traffic. To recover damages for her injuries Mrs. Lail filed an action at law against Diggs, the Producers Cooperative Exchange, Inc., Holmes and Hatchett. During the trial she took a nonsuit as to all of the defendants, except Diggs, against whom she recovered a verdict and judgment of $35,000. Diggs has appealed claiming, (1) the evidence is insufficient to sustain the verdict and judgment against him; (2) the lower court erred in not withdrawing from the jury the consideration of the plaintiff's alleged mental "depression" or "changes of mood" as an element of her damages; (3) the court erred in its rulings on the instructions to the jury; and (4) the court erred in permitting counsel for the plaintiff to make an improper argument to the jury.

The accident occurred on June 26, 1957, about 3:20 p. m., near the intersection of Main and North Seventeenth streets in the city of Richmond. The three vehicles mentioned were in a line of heavy traffic which had been moving at a slow pace westwardly along Main street. Just before the collision the line of traffic had come to a stop because of a traffic light ahead. Diggs, failing to observe that the Producers vehicle had stopped ahead of him, did not apply his brakes in time to prevent his car from running into the rear of that vehicle.

At the time of the accident Diggs, who is an employee of the American Tobacco Company, had as passengers in his car five women including the plaintiff who were likewise employees of that company.

For some time prior to this occurrence Diggs had customarily transported these passengers to and from their work each day. For this service each of the passengers gave him the equivalent of her bus fare and he accepted these payments as such.

According to the evidence for the plaintiff, just before the impact Diggs had taken his eyes from the street ahead, partly turned in his seat, and was talking to the passengers in the rear. Drema Compton, one of the passengers on the front seat, noting that Diggs had failed to observe that the Producers vehicle had stopped, exclaimed three times, "Look out!" After the third warning Diggs turned around and applied his brakes, but not in time to avoid the collision. Diggs admitted that just before the collision he had been talking to the passengers on the rear seat, but did not "recall" having turned his head in that direction. He did not hear the warnings of the passenger.

Holmes, the driver of the Producers vehicle, testified that the force of the impact drove his vehicle ahead a distance of 14 feet into the rear of the Hatchett car. According to Diggs, his car came to a stop about four feet to the rear of the Producers vehicle. At any rate, the plaintiff, who was riding on the left rear seat, was thrown forward and her face struck the back of the front seat.

Immediately after the collision it was observed that the plaintiff had sustained "a little blood blister" on her eyelid. While she was not rendered unconscious, she was upset and crying. She was taken to a hospital where she was given first-aid treatment and left within an hour or two. The next day she returned to the hospital complaining of a headache and upset stomach. She was admitted and remained at the hospital for 23 days under the care of Dr. Joseph F. Kell, Jr., a neurosurgeon. After an examination Dr. Kell found that she had suffered a "mild cerebral concussion," but no brain damage, and advised her to return to work.

The plaintiff testified that upon returning to work on August 12, she was "confused," unable to "concentrate," unable to do her work, and was sent home after one week. The company physician suggested that she return to Dr. Kell. When she learned that he was on vacation she consulted another physician who referred her to Dr. George S. Fultz, Jr., a psychiatrist at the Tucker Hospital, an institution specializing in nervous and neurological diseases. After treating the plaintiff over a period of six months Dr. Fultz found that she had "no indication of any organic damage of her brain from the accident," but that she had "a reactive type of depression." It was his opinion that while

the accident had not "caused" the condition, yet, he said, "she was precipitated into a depression by the accident." Further explaining, he said: "I don't think the accident itself ever causes a depression. I think the threat to an individual's security afterwards—the general shake-up in some individuals is enough of a stress for certain people that they will get depressed." He defined a "depression" as "a psychiatric term applied to changes of mood." Depressed persons, he said, "lose interest; they simply can't function; they can't take care of themselves; they feel so badly, they are sick people." It was the opinion of Dr. Fultz that the plaintiff would require an additional six months' treatment.

The plaintiff was referred by Dr. Fultz to Dr. Isadore S. Zfass, a psychiatrist and neurologist, who is a member of the staff of several hospitals in Richmond. Dr. Zfass saw the plaintiff a number of times between June 6, 1958, and the time of the trial which began on February 17 1959. He thus stated his conclusions:

"Well, my impression is that this patient has a post-traumatic syndrome,[1] as manifested by the history of the head injury, with dazing, a concussion, with resultant recurrent headaches, dizziness, depression, anxiety, emotional instability, nightmares, memory impairment, 'blankout' spells; questionable neurological findings, vasomotor and autonomic nervous system changes, and electroencephalographic changes.

"It is my impression that this patient is still quite ill and will require intensified psychotherapeutic and rehabilitative measures. Hospitalization may be required in the future."

In answer to a question from the court Dr. Zfass expressed the opinion that "this trauma has produced such a severe disruption of her functioning, her personality, that twenty months after the accident she is still very ill," and that he "would not be too hopeful for any recovery."

The plaintiff's brother and sister-in-law corroborated her testimony that at the time of the trial she was still confused, unable to do housework, and afraid to live alone in her apartment. After the plaintiff had testified that since the accident she had not lived at her apartment or spent any week ends there, and was unable to do her housework, the defendant introduced the testimony of two private investigators to the contrary. They testified that she had stayed at

---

[1] Webster's International Dictionary defines the term as "a group of signs and symptoms that occur together, and characterize a disease."

her apartment two week ends immediately prior to the trial, during which time she was doing household work and purchasing groceries. Their testimony was corroborated by moving pictures, the genuineness of which was not disputed. The plaintiff then returned to the stand and admitted that she had been staying at her apartment on some week ends and while there had been doing light housework.

■ On the merits the defendant does not question the sufficiency of the evidence to sustain the finding that he was negligent and that his negligence was a proximate cause of the accident. But, he says, the evidence further shows that the plaintiff was guilty of contributory negligence as a matter of law. His argument is that the basis of the plaintiff's claim is that he, Diggs, the driver, was negligent in turning his attention from the street ahead and engaging in conversation with the passengers on the rear seat, and that according to the plaintiff's own testimony she observed this and yet failed to warn him of the impending danger.

It is, of course, true that when a passenger has observed a dangerous situation of which the driver is apparently unconscious, it is the passenger's duty, if he is so situated that he can readily do so, to call the driver's attention to it; and if he fails to do so and is injured as a result of such failure, he is guilty of negligence. *Remine* v. *Whited,* 180 Va. 1, 8, 21 S. E. 2d 743, 746; *Steele* v. *Crocker,* 191 Va. 873, 883, 62 S. E. 2d 850, 855. But, as we pointed out in *Atlantic Coast Line R. Co.* v. *Withers,* 192 Va. 493, 509, 65 S. E. 2d 654, 662, the danger, if apparent, must have existed for such period of time as would enable the passenger to give timely warning.

In the present case the plaintiff admitted that she saw Diggs turn his head toward the passengers on the rear seat. But she further said that because she was seated immediately behind him she did not see that the vhicle ahead had come to a stop until one of the passengers had exclaimed and warned him of the danger. When asked if she could tell how long Diggs had been looking back before the warning and the collision, her reply was, "It all happened so quickly, I don't believe I could." Drema Compton, who gave the warning cries, testified that her three exclamations were "close together." Helen Bates, another passenger, said "it all happened just in a split second." There is no evidence to the contrary. Thus, it does not appear that the plaintiff was so situated that she could have given the driver a timely warning of the impending danger. Moreover, had she undertaken to warn him, this would have added nothing to the warning

which he had already received from the other passenger. See *Yorke v. Cottle*, 173 Va. 372, 376, 377, 4 S. E. 2d 372, 374; *Boyce v. Black*, 123 W. Va. 234, 15 S. E. 2d 588, 591.

Hence, we agree with the ruling of the lower court that the plaintiff was not guilty of contributory negligence as a matter of law. Indeed, contrary to the defendant's further contention, the evidence which has been related did not warrant the submission to the jury whether she was guilty of such contributory negligence.

One of the main contentions of the defendant is that the lower court erred in not withdrawing from the jury the consideration of the plaintiff's alleged mental "depression" or "changes of mood" as an element of her damages. At the trial it was unsuccessfully contended by a motion to strike and by objections to the instructions granted and refused, that the medical testimony offered by the plaintiff was too "inconsistent" and "speculative" to sustain a finding of causal connection between the accident and such condition of the plaintiff. The same contention is urged on this appeal.

The burden here was on the plaintiff to prove with reasonable certainty or by a preponderance of the evidence that the injuries for which she claims damages were properly attributable to the accident. 25 C. J. S., Damages, § 162, p. 822 *ff.*; 15 Am. Jur., Damages, § 356, p. 796. As has been said, Dr. Fultz, one of the principal witnesses for the plaintiff, testified that in his opinion the accident had not "caused" the plaintiff's depression, but that she was thereby "precipitated into a depression." Dr. Zfass, who likewise testified for the plaintiff, was more favorable to her claim. He expressed the opinion that she "has a posttraumatic syndrome," that is, a group of symptoms which characterize a disease. He further testified that this was manifested "by the history of the head injury, * * * with resultant recurrent headaches, dizziness, *depression*, anxiety, emotional instability, * * *." (Italics supplied.) He also said that "this trauma has produced such a severe disruption of her functioning, her personality, that twenty months after the accident she is still very ill."

It is true that Dr. Zfass admitted on cross-examination that "it is possible" that the trauma which brought about the plaintiff's condition occurred earlier in life or when she was a child. But in the absence of any evidence that the plaintiff had previously suffered a trauma, coupled with her own testimony that she was in good health prior to the accident with which we are concerned, the jury had the

right to infer from the testimony of Dr. Zfass that this accident produced the "depression" and other symptoms of which she now complains.

The fact that the testimony of Dr. Zfass and that of Dr. Fultz, both of whom were witnesses for the plaintiff, may be in conflict as to the causal connection between the accident and the plaintiff's depression does not require that the testimony of either, or both, should be rejected. Nor was the plaintiff bound by the less favorable testimony of Dr. Fultz. 58 Am. Jur., Witnesses, § 797, pp. 442, 443; 98 C. J. S., Witnesses, § 630, pp. 647, 648. It frequently happens that witnesses testifying for a party may give conflicting evidence with respect to a material issue at the trial. In such a situation it is for the jury to say which witness, other than the litigant himself, they will believe and what testimony they will accept. Such is the situation here. *Birtcherds Dairy* v. *Randall*, 180 Va. 311, 315, 316, 23 S. E. 2d 229, 232.

At the trial the defendant objected to the refusal of the court to grant Instruction I, which read thus: "The court instructs the jury that they are the sole judges of the weight and credibility of evidence and the jury has the right to discard or accept the testimony or any part thereof of any witness, which the jury regards proper to discard or accept, when considered in connection with the whole evidence in the case."

Counsel for the plaintiff concedes that the instruction is in proper form, but argues that there was "no sharp conflict of evidence" in the case, and hence the failure to give the instruction was harmless error. We do not agree with this position of the plaintiff. There was a serious conflict in the evidence, particularly as to the nature and extent of the plaintiff's injuries. It will be recalled that it was testified to by her and others of her family that since the accident her condition was such that she could not do her housework and could not and did not stay alone in her apartment, but lived with her brother. To prove that these statements were not true the defendant offered the testimony of private investigators that she was living at her apartment for at least two week ends just prior to the trial and doing her housework there.

Moreover, as has been pointed out, there was a serious conflict in the testimony of the several physicians who were called by the plaintiff. While Dr. Kell found that the plaintiff had suffered no brain

damage as a result of her injuries, Dr. Zfass' testimony was to the contrary. Again, while Dr. Fultz expressed the opinion that the accident had not caused the plaintiff's depression, Dr. Zfass was of the contrary opinion.

In *Low Moor Iron Co.* v. *Jackson,* 117 Va. 76, 84, 84 S. E. 100, in commenting on the duty of the court to instruct the jury on the credibility of the witnesses, we said: "Juries are judges of the credibility of witnesses, but they do not exercise an arbitrary discretion, and it is the duty of the court, while not in the least intimating its opinion upon the facts, to give to the jury, either of its own motion or when requested by either of the parties, proper instructions to enable them intelligently to consider, weigh and determine the value of the testimony and other evidence submitted for their consideration." See also, 88 C. J. S., Trial, § 310, p. 825; *Id.* § 315, p. 833; *State* v. *Owens,* 96 W. Va. 308, 122 S. E. 909.

In view of these serious conflicts in the evidence the refusal of the lower court to grant the requested instruction was reversible error.

■ In one of its instructions the court told the jury that one who negligently inflicts a personal injury on another is responsible for all of the ill effects which "naturally and necessarily follow such injury." In arguing the application of this instruction, counsel for the defendant contended that the claimed depression was not caused by the accident because it did not "naturally and necessarily" follow the injury. In replying, counsel for the plaintiff said that the language of the instruction "doesn't mean that." Counsel for the defendant contends that this was an improper attack on the language of the instruction and the jury should have been so told. This contention would be correct had that been the purpose or effect of the argument of counsel for the plaintiff. But, as we interpret his argument, it was not designed to attack the language of the instruction, but rather to question the application which counsel for the defendant had made of it. Apparently the lower court took the same view. In any event, the incident was trivial and the failure of the lower court to clarify the situation does not constitute reversible error.

Because of the error of the lower court in refusing to grant Instruction I, the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*