# Richmond

O. W. SMITH v. OLIVENE WRIGHT.

November 28, 1966.

Record No. 6302.

Present, All the Justices.

*H. E. Widener, Jr.* and *James R. Moore* (*Ralph L. Lincoln; Widener, Widener & Frackelton,* on brief), for the plaintiff in error.

*Stuart B. Campbell, Jr.* (*Robert I. Asbury; Campbell & Campbell,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Mrs. Olivene Wright filed a motion for judgment against O. W. Smith to recover damages for injuries alleged to have been received by her when a car negligently driven by Smith ran into the rear of the car driven by her husband, Gilbert Wright, in which she was riding as a passenger. The defendant Smith denied the plaintiff's

allegation that the injuries of which she complained were proximately caused by his negligence. There was a trial by a jury which resulted in a verdict in favor of the defendant. Being of opinion that the verdict was contrary to the law and the evidence, the trial court set it aside and awarded the plaintiff a new trial. A second trial resulted in a verdict and judgment in favor of the plaintiff in the sum of $7,500, and the defendant has appealed. The sole assignment of error is that the trial court erred in setting aside the verdict rendered at the first trial.

Originally the defendant contended that the verdict at the first trial absolved him of negligence. But in the argument before us he abandoned that contention and now relies upon the position that the verdict at the first trial was a finding by the jury that the condition of which the plaintiff complains was not proximately caused by the collision and by his negligence.

Since the verdict at the first trial was in favor of the defendant, the evidence will be stated and considered in the light most favorable to him. On December 21, 1963, about 4:00 P. M., the Wright car stopped momentarily at a street intersection in the town of Saltville for the traffic ahead to clear. While the Wright car was thus stopped a car driven by the defendant Smith pulled in behind it and came to a stop. As it did so the front bumper of the Smith car lightly "tapped" the rear bumper of the Wright car. Smith said that just before the impact he was going "very slowly," not more than "two or three miles an hour;" that the impact was so slight that the Wright car "never moved;" and that neither he nor Wright got out at the scene to see whether either car had been damaged. Later, Smith said, he saw Wright at a near-by market and asked him whether his (Wright's) car had been damaged, to which Wright replied that the only damage done to his car was "a little dent in his license plate," but that the impact had " 'kind of wrenched' " Mrs. Wright's neck. Smith further said that his own car did not have "a scratch on it" as the result of the impact.

Smith also testified that as he was slowing down behind the Wright car he took his eyes from that car, looked around to see whether he could "catch an opening" in the traffic, and that as he did so the impact occurred. He now concedes that he was negligent in this instance.

Wright testified that his car was not damaged by the impact and that he had so told Smith. But, he said, the blow "jerked" his car up.

Mrs. Wright testified that as the result of the impact she "felt like something pulled in the back of my neck and my shoulders." She further testified that the pain and muscle spasms which she suffered as the result of the accident have continued unabated since then, that the back of her neck down to the waist "aches all the time," and that the pain has been so severe that she has been unable to perform her household duties and carry on her business as a "beauty operator."

Although Mrs. Wright testified that she complained to her husband at the scene that "my neck is killing me," she did not go to see a physician at Saltville. Instead, she and her husband drove that night a distance of twenty-one miles from Saltville to Marion to see Dr. J. Stuart Staley, who Mrs. Wright said had been her physician "for several years" and knew her condition.

Dr. Staley, a physician and surgeon practicing at Marion, testified that he examined Mrs. Wright on the night of the accident, but that she was not a regular patient of his; that he had in fact seen her only once before, in either October or November, 1963. He said she gave as the history of the accident, that while her husband's car had stopped at a street intersection in Saltville it was "suddenly struck from the rear" by the Smith car which then drove away,[1] and that the force of the impact was such that the Wright car was "knocked into the intersection." She further told him that immediately after the impact she felt a "sharp, aching pain in the region of her lower dorsal and lumbar spine" which still persisted.

Based on this history and complaint of Mrs. Wright, Dr. Staley was of opinion that she had suffered "a whiplash injury of the cervical and lumbar spine with muscle spasms and associated pain." He treated her for this from December 21, 1963, when she first came to see him, until February 23, 1965, about ten days before the trial. In the meantime she had been hospitalized under his direction on three occasions in February, May and October, 1964.

Dr. Staley further expressed the opinion that a whiplash injury usually results when "an inert body seated in a vehicle that moves suddenly, sharply or violently and of course the head tends to remain where it is and thereupon the body tends to go forward and then the head follows;" that unless the vehicle were "pushed forward to some extent" a whiplash injury would not result from the impact.

On August 31, 1964, Mrs. Wright was given a complete examina-

(1) Her statement that Smith had thus callously left the scene was contrary to the testimony of both Smith and Wright.

tion by Dr. James G. McFadden, an orthopedic surgeon practicing at Bristol, Tennessee. Called as a witness for the defendant, Dr. McFadden testified that he found no evidence of muscle spasm, nor did he find any "fascitis" which would have been evident had Mrs. Wright suffered a long and continuous muscle spasm, as she claimed. He expressed the opinion that her anxiety or nervousness may have caused her muscle spasm.

Dr. McFadden agreed with Dr. Staley that the severity of a "sprain injury," such as that of which Mrs. Wright complained, would vary with the force of the impact involved in the particular collision. Except for the history of the accident which Mrs. Wright gave Dr. Staley, there is no evidence of a severe impact on this occasion. Neither Mrs. Wright nor her husband contradicted the testimony of Smith that the impact was slight and that neither vehicle was damaged thereby. It is thus clear that the history which Mrs. Wright gave Dr. Staley as to how the accident occurred, and upon which he partly based his diagnosis, was not true.

As we pointed out in a similar situation in *Diggs* v. *Lail*, 201 Va. 871, 876, 114 S. E. 2d 743, 747, "The burden here was on the plaintiff to prove with reasonable certainty or by a preponderance of the evidence that the injuries for which she claims damages were properly attributable to the accident." See also, 25A C. J. S., Damages, § 162(5), pp. 86, 87; *Id.*, § 162(6), p. 92 *ff.*; 22 Am. Jur. 2d, Damages, § 296, pp. 394, 395.

In accord with this principle the trial court, at the request of the defendant, granted Instruction "C" which read:

"The court instructs the jury that damages are not presumed nor may they be based upon speculation, but must be proven; and the burden is on the plaintiff to prove by a preponderance of the evidence each item and element of damage claimed, and unless such item or element thus claimed is proven by a preponderance of the evidence, the plaintiff cannot recover therefor.

"And if the jury are uncertain as to whether any particular element of damage claimed was caused by the collision, or if it appears just as probable that any injury or element of damage complained of resulted from a cause other than the collision as that it did, then the plaintiff cannot recover therefor."

Under this instruction, as applied to the related facts and circumstances, the jury were warranted in finding that the plaintiff had

failed to prove with reasonable certainty or by a preponderance of the evidence that the injuries for which she claims damages were properly attributable to the accident. The gist of her case is that as the result of the collision she suffered a severe whiplash injury, that Dr. Staley diagnosed her injury as such, and that since the accident she has continued to suffer. But, as has been said, Dr. Staley's diagnosis was partly based on her statement to him that the impact of the collision was quite severe and so violent as to force or drive the Wright car into the intersection. The evidence at the trial is quite to the contrary. Both the plaintiff's husband and the defendant Smith testified that the impact was slight, and the plaintiff did not testify to the contrary.

Moreover, the jury had the right to believe from the testimony of Dr. McFadden that the plaintiff had not in fact suffered a whiplash injury, because there had been no evidence of a severe impact, nor, as he said, was there any physical indication to corroborate her contention that she had suffered a long and continuous muscle spasm.

In *Diggs* v. *Lail, supra,* we held that in a personal injury action where there is a conflict in the evidence as to the nature and extent of the plaintiff's injuries, the jury are the sole judges of the weight and credibility of the evidence and have the right to discard or accept the testimony, or any part thereof, of any witness when considered in connection with the whole evidence before them. 201 Va. at 877, 878, 114 S. E. 2d at 748.

The same principle applies in the situation here. The weight and credibility of the testimony of Mrs. Wright as to the nature and extent of her injuries were for the jury. In passing upon the credibility and weight of her testimony they had the right to take into consideration the fact that she had given Dr. Staley an untrue statement as to how the accident occurred and had falsely told him that Smith had left the scene of the accident. They also had the right to find from her testimony that she had greatly exaggerated her alleged injuries. Obviously, at the first trial, the jury did not accept the plaintiff's testimony as to the nature and extent of her injuries. It was within their providence to do so.

We are of opinion that the trial court erred in setting aside the verdict of the jury at the first trial. Accordingly, the judgment appealed from will be reversed and a judgment will be here entered on that verdict in favor of the defendant.

*Reversed and final judgment.*