JOSEPH R. VILSECK, JR.

V.

EUGENE H. CAMPBELL, JR.

Record No. 901378

June 7, 1991

Present: All the Justices

*Michael H. Gladstone (Douglas B. Robelen; Mays & Valentine*, on brief), for appellant.
*Thomas D. Stokes (Lynne Jones Blain; Morris and Morris*, on brief, for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this personal injury case, the jury returned a verdict in favor of the plaintiff on the question of liability but awarded him no damages. The sole question on appeal is whether the trial court erred in refusing to set aside the verdict and award a new trial on the issue of damages.

The accident occurred on May 10, 1980, at the intersection of Routes 30 and 360 in King William County.[1] The plaintiff, Joseph R. Vilseck, Jr., had just entered the intersection going east on Route 360 when his Jeep Wagoneer was struck by a pickup truck being operated in a southerly direction on Route 30 by the defendant, Eugene H. Campbell, Jr.

On appeal, the plaintiff states the evidence as though he prevailed on the damage issue below. Because the defendant was the prevailing party on that issue, he is entitled to have the evidence viewed in the light most favorable to him. *Mastin v. Theirjung*, 238 Va. 434, 436, 384 S.E.2d 86, 87 (1989).

The plaintiff, a Richmond physician, gave the only live testimony concerning his injuries. He was asked by his counsel "what was hurt about [him]" in the accident. He replied that his "elbow hurt," that his "arm felt kind of bumped up." He was also asked why he did not "go to a doctor right then." He responded: "Well, I didn't have any overt injuries. I had . . . no broken bones. I felt okay. I had no major lacerations, so I felt I could walk."

---

[1] Although the accident occurred on May 10, 1980, the case was not tried until April 10, 1990, almost ten years later. The record does not disclose the reason for the prolonged delay in bringing the case to trial.

A state trooper investigated the accident. He testified that he did not record in his notes that the plaintiff was injured, only that the plaintiff's son suffered injury. The plaintiff was asked on cross-examination whether he told the trooper he had any injuries. The plaintiff replied: "Well, I wasn't injured. I had no broken bones. The arm was painful. [My son's] head was banged up. You know, we could walk, we could talk, we were conscious. And as much as I know about medical care, I felt I was all right."

The plaintiff testified further as follows: He knew on the Thursday following the Saturday accident that something was "really wrong." He "noticed pain developing in [his] hand, . . . and it started going up the arm a little bit." The next day, he went to a medical meeting in Baltimore and, while changing clothes in his hotel room, took off his T-shirt. His wife screamed and said: "What happened to your arm?"[2] He looked at his arm and saw that it was "red and blue [with] a nice red streak going up the blood vessel," indicating he had phlebitis. He called Dr. Austin, a friend who was staying at the same hotel. Dr. Austin looked at the arm. After Dr. Austin's visit, the plaintiff "laid in bed" and took some aspirin.

The plaintiff left the meeting early and returned home to Richmond where, on the following Monday, he saw Dr. William A. Robertson. This physician advised him to "put [the arm] in a sling, put heat on it and take aspirin for continued help." The plaintiff missed 2-½ days from work, with "lost charges" estimated at $5,000. He was on a reduced schedule "the rest of the month," during which time he had difficulty examining patients and performing bronchoscopies and surgery. He estimated that his "lost charges" for this latter period also totalled $5,000.

Continuing, the plaintiff testifed that after his phlebitis subsided, he still had pain and swelling in his arm, and he consulted Dr. John F. Meyers. Dr. Meyers x-rayed the arm and referred the plaintiff to a "physical therapy doctor."

Then, in 1985, five years after the accident, the plaintiff "started seeing a mass come out of [his] elbow" while lifting weights. He "didn't think too much of it" and "continued on with that exercise." "The next thing [he] knew, it got a little bit larger and a little bit larger, then [he] started to develop pain." He went back to Dr. Meyers, who performed outpatient surgery in 1987

---

[2] The plaintiff's wife did not testify.

and removed a benign lipoma. The plaintiff had to keep his arm in ice for 72 hours and then was forced to "work with [his] arm in a sling." His medical expenses for the surgery totalled $2,158.93.

The plaintiff also testified that he suffered inconvenience from having to wait two hours for a ride after the accident. He said further that his injuries interfered with his ability to engage in sports and do yard work. He admitted, however, that in the autumn of 1987, he won the racquetball championship at the Westwood Club in Richmond. He explained that he played "in the old guy's thing," that he was "over 50 years old."

In addition to Doctors Austin, Robertson, and Meyers, the plaintiff also saw Doctors Decker, Foster, and O'Bannon. None of these doctors testified in person at trial or by way of deposition. On a motion made by the defendant pursuant to Rule 4:10, the plaintiff was examined by Dr. Frederick S. Fogelson. A letter report written by Dr. Fogelson was admitted into evidence as a plaintiff's exhibit, but the plaintiff did not call the doctor as a witness. In the report, Dr. Fogelson stated:

> It was my impression that [the plaintiff] sustained a soft tissue injury to his left elbow causing him to develop post traumatic fat necrosis in the antecubital fossa. It was also felt that he may be developing a tardy ulnar nerve palsy . . . . Based on his ongoing symptoms suggestive of a post traumatic tardy ulnar nerve palsy, following the development of fat necrosis in the antecubital fossa of his injured elbow, it is my belief that [the plaintiff] has sustained a 10% partial permanent disability to the left upper extremity as a result of injuries sustained in the accident of May, 1980.

On appeal, the plaintiff submits that it is the duty of this Court to determine whether the evidence he presented required the jury to award some damages. The plaintiff maintains that he offered substantial, credible, and unrebutted testimony as to the nature and extent of his injuries; hence, an award of damages "had to accompany" the verdict in his favor on liability.

We disagree with the plaintiff. The difficulty with his case is that his evidence is far from unrebutted; indeed, it is self-rebutted. While, during his testimony, he said that his "arm was painful" after the accident, he told the jury almost in the same breath that he "wasn't injured" and "was all right." At another point, he tes-

tified that his "elbow hurt" after the accident, but he said almost at the same moment that he "didn't have any overt injuries" and "felt okay."

This is not a case where a party makes a statement after an accident that he or she has suffered no injury but later develops symptoms of actual injury. This is a situation where a plaintiff has told a jury he was injured in an accident but has contradicted himself by saying he was not injured. The jury was free to accept the version indicating actual injury and to award damages. The jury was equally free, however, to accept the version indicating the absence of injury and to deny damages. *See Smith* v. *Wright*, 207 Va. 482, 486, 151 S.E.2d 359, 363 (1966). The jury obviously accepted the version indicating the absence of injury and denied damages.

The plaintiff's evidence with respect to the tumor on his arm is deficient for an additional reason — no evidence established a causal connection between the accident and the development and removal of the tumor. The plaintiff, who, as noted previously, is a physician, did not say during his testimony that the accident caused the tumor, and not one of the physicians he consulted took the stand and testified there was a causal connection.

Nor was the report of Dr. Fogelson sufficient to supply the deficiencies in the plaintiff's proof, either on the issue of causation or otherwise. Dr. Fogelson said it was his "impression" that the plaintiff had suffered a soft tissue injury to his left elbow. Dr. Fogelson also said that he "felt" the plaintiff "may" have been developing a tardy ulnar nerve palsy. And, while Dr. Folgelson said it was his "belief" that the plaintiff had sustained a 10% partial permanent disability as a result of injuries suffered in the accident, this belief was based upon symptoms Dr. Fogelson merely termed as "suggestive" of a post-traumatic tardy ulnar nerve palsy.

In this area of the law, we deal in terms of proof with reasonable certainty, of probabilities rather than possibilities. *Diggs* v. *Lail*, 201 Va. 871, 876, 114 S.E.2d 743, 747 (1960); *Gwaltney* v. *Reed*, 196 Va. 505, 507-08, 84 S.E.2d 501, 502 (1954). Dr. Fogelson's report speaks in terms of impression, feeling, supposition, and suggestion. These are expressions of possibility, not probability. Hence, Dr. Fogelson's belief that the plaintiff sustained a 10% permanent disability could not have been based

upon reasonable medical certainty but, rather, upon mere possibility.

■ The cases of *Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 277 (1977), *DeWald* v. *King*, 233 Va. 140, 354 S.E.2d 60 (1987), and *Bradner* v. *Mitchell*, 234 Va. 483, 362 S.E.2d 718 (1987), cited by the plaintiff, are inapposite. In each instance, the jury found some damages were sustained but failed to take into consideration all the proper elements of damage for which, under the evidence, the injured party was entitled to recover. Here, the jury found no damages were sustained, and the evidence supports that finding. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*