PRESENT: All the Justices

NANCY MAE GILLIAM

v. Record No. 151944

JACOB THOMAS IMMEL

OPINION BY
JUSTICE ELIZABETH A. McCLANAHAN
January 19, 2017

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Edward A. Robbins, Jr., Judge

In this personal injury action filed by Nancy Mae Gilliam against Jacob Thomas Immel, the jury awarded a verdict in favor of Gilliam but awarded her no damages. On appeal, Gilliam contends that the trial court erred in denying her motions to set aside the verdict and for a new trial. She also argues that the trial court erred in excluding a racially charged statement made by Immel at the scene of the vehicle accident. We affirm the judgment of the trial court.

I.

Gilliam seeks damages arising from personal injuries she claims to have sustained when a vehicle being operated by Immel struck the rear bumper of the vehicle Gilliam was operating. Immel admitted liability, and therefore, the trial was limited to the issue of damages. Because Immel prevailed on the issue of damages, we review the evidence on that issue in the light most favorable to him. *Vilseck v. Campbell*, 242 Va. 10, 11, 405 S.E.2d 614, 614 (1991) (noting that where the jury returned a zero dollar verdict, "[the defendant] is entitled to have the evidence viewed in the light most favorable to him"); *Mastin v. Theirjung*, 238 Va. 434, 436, 384 S.E.2d 86, 87 (1989) (noting that where the jury returned a zero dollar verdict, "we summarize the facts on [the damages] issue in the light most favorable to [the defendant]").

Gilliam was stopped at a traffic light with both hands on the steering wheel of her vehicle when she "heard something boom." She "saw [herself] headed towards traffic" and

"immediately put [her] foot back on the brake to stop." Gilliam "realized that [Immel] had hit [her]" when she looked in her rearview mirror and saw his vehicle "backing up." During the accident, Gilliam was restrained by her seatbelt and no part of her body came into contact with any part of her vehicle. Gilliam testified that at the time of the impact, her "body just tensed up" but she did not suffer any cuts, scrapes, bruises, swelling, or other visible signs of injury. Gilliam did not testify as to any damage to her vehicle and presented no other evidence of such damage. Immel introduced two photographs taken of the rear bumper of Gilliam's vehicle after the accident. The photographs did not depict discernible damage to Gilliam's vehicle, though there were "circle marks" on the photographs that were made by Gilliam in an effort to "pick out the damage on the vehicle."

At Gilliam's request, she was transported by emergency medical personnel to Southside Regional Medical Center. Gilliam testified that she complained of pain in her lower back and right side of her neck at the accident scene and to personnel at the Southside Regional Medical Center. According to Gilliam, "they did [an] x-ray on [her] neck and back and they gave [her] . . . medicine." Gilliam went to work as usual the day after the accident. Gilliam testified she visited her primary physician twice after the accident with complaints of severe lower back and neck pain. Gilliam stated that "he gave [her] some medicine" and recommended that she see an orthopedic doctor. Gilliam testified she then sought treatment from physicians at Advanced Orthopaedic Centers and received physical therapy. Gilliam presented no medical evidence to support her claim of back and neck injury. She admitted that she had previously undergone back surgery several years prior to the accident.

According to Gilliam, she complained to her doctors at Advanced Orthopaedic Centers of pain "going down" to her shoulder, and they referred her to a neurologist who ordered an MRI of

2

her shoulder and directed her to see Dr. Marion Herring at Advanced Orthopaedic Centers. Dr. Herring, the only medical witness offered by Gilliam, first saw Gilliam approximately ten months after the accident for complaints of right shoulder pain. Dr. Herring testified that the MRI scan of her shoulder depicted "a partial tear around her bicep tendon and a labral tear." After giving Gilliam a steroid injection in the bursa area of her shoulder, Gilliam reported 90% immediate improvement. Subsequently, he performed surgery on Gilliam's shoulder and prescribed physical therapy. Gilliam missed one day of work on the day of her surgery and then resumed her normal work schedule. Although Dr. Herring related Gilliam's shoulder injury to the accident based on Gilliam's report that her shoulder pain started at the time of the accident, he also testified that the MRI scan revealed other conditions in her shoulder including bursal surface fraying, degenerated labrum and AC joint osteoarthritis, all of which could have pre-dated the accident.

Gilliam introduced a summary of medical bills that totaled approximately $73,000 and covered the time period from the date of the accident through her last visit with Dr. Herring. Immel agreed that the medical bills were actually incurred by Gilliam but expressly stated he was "not conceding [the bills] were related to the motor vehicle accident." Dr. Herring testified that his care and treatment of Gilliam's shoulder was "reasonably medically necessary" and "reasonably medically related to the automobile accident." No other medical provider testified as to the reasonableness or necessity of any other treatment Gilliam received.

Immel offered the testimony of Dr. Terry Whipple as an expert in orthopedic surgery. Dr. Whipple did not treat or examine Gilliam. He concluded that there was "no relation between [Gilliam's] shoulder, even her shoulder symptoms, much less any pathology or surgery and the motor vehicle accident." He testified that "[t]he injuries that [Gilliam] sustained in the accident

3

according to all of the evidence" led to his "impressions" that "she had a muscular strain injury to her neck and a muscular strain injury to her low back." Dr. Whipple offered no opinion as to how long a muscle injury would be symptomatic, stating that "symptoms are expressed as a subjective impression of the person who is injured." According to Dr. Whipple, muscle strain injury "would resolve within a short period of time, [meaning] weeks, and have no ongoing or residual significance at all." Dr. Whipple further testified that while "there may be some advantage to medical treatment" within the initial six weeks after a strain, "we can influence that process for better or worse with medical intervention."

After the jury retired to deliberate, the jury submitted the following question to the trial court: "Have the first four expenses listed in the summary of medical bills been or will be covered by the defendant or the defendant's insurance?"[1] Noting it did not know if the question originated from one or more jurors and that regardless, it had no need to know the answer, the trial court gave the following response upon agreement of counsel: "Insurance of any kind or the lack of insurance of any kind has no role in this lawsuit. You cannot consider that issue as part of your deliberations. And that is because you have received no evidence on that and the law does not permit you to speculate as to the presence or absence of insurance. You must reach a verdict, if you can, on the evidence that's been presented by the lawyers and the law as the Court has instructed you." [2]

---

[1] The first four expenses listed in the summary consist of bills for services rendered on the date of the accident by Colonial Heights Fire & EMS, Southside Regional Medical Center, and Emergency Medical Group, and services rendered by Gilliam's primary physician for a period of over five months following the accident.

[2] Although Gilliam contends that the jury's question submitted during its deliberation shows it was "influenced by passion or prejudice" or "misconceived or misinterpreted the facts or the law," any such inference would be pure conjecture. We will not assume that the jury

4

Following deliberation, the jury returned a verdict for Gilliam and assessed her damages at zero dollars. Gilliam moved the trial court to set aside the jury verdict and award a new trial. The trial court denied Gilliam's motions and entered judgment on the jury's verdict.

## II.

Gilliam asserts that the trial court erred in denying her motions to set aside the jury verdict and award a new trial, and argues that she presented uncontroverted evidence that she was injured.

When a jury has returned a zero dollar verdict, the issue is whether plaintiff "produced sufficient evidence to *require* the jury to award her damages." *Mastin*, 238 Va. at 437, 384 S.E.2d at 88 (emphasis in original).

> If there is conflict of testimony on a material point, or if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this [C]ourt.

*Hall v. Hall*, 240 Va. 360, 363, 397 S.E.2d 829, 831 (1990) (quoting *Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S.E. 15, 19 (1921)).

The evidence as to the nature and extent of Gilliam's injuries was not only in conflict, but dependent upon the credibility and weight of the witness testimony. With regard to Gilliam's claimed shoulder injury, there was conflicting testimony from the medical experts as to whether the shoulder condition and accompanying treatment, including surgery, were related to the accident. Gilliam does not argue otherwise. Gilliam contends, though, that the jury was required to find, "at a minimum, that [she] suffered low-back and neck muscle injuries that were

---

deliberately ignored the instruction of the trial court. *See Raisovich v. Giddings*, 214 Va. 485, 487-88, 201 S.E.2d 606, 608 (1974).

symptomatic for at least six weeks" and to award her damages for such injuries "and the treatment she sought for those injuries for at least six weeks." However, the issue of whether Gilliam sustained injuries to her lower back and neck in the accident was entirely dependent on the credibility of Gilliam, which in turn, affected the weight of Dr. Whipple's opinion that she suffered lower back and neck strain. "[T]he jury are the sole judges of the weight and credibility of the evidence and have the right to discard or accept the testimony, or any part thereof, of any witness when considered in connection with the whole evidence before them." *Smith v. Wright*, 207 Va. 482, 486, 151 S.E.2d 359, 363 (1966).[3]

The evidence demonstrated that the impact between the vehicles was minimal. Gilliam testified that no part of her body hit any part of the vehicle and that she sustained no visible injury. Gilliam presented no evidence of damage to either vehicle and the photographs of the rear bumper of Gilliam's vehicle introduced by Immel did not show any discernible damage. Gilliam admitted that she was taken to the hospital at her own request based on her subjective complaints of pain. Although Gilliam testified that she experienced lower back and neck pain upon impact and received treatment for such complaints, she presented no medical evidence to support her claims of lower back and neck injury. She went to work the day following the accident and continued to work her normal schedule until she underwent surgery on her shoulder nearly a year later. The jury, as the sole judge of Gilliam's credibility, was entitled to reject her

---

[3] The jurors were instructed that they "are the judges of the facts, the credibility of the witnesses, and the weight of the evidence." The jury was also instructed that it "may not arbitrarily disregard believable testimony of a witness. However, after you have considered all of the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper." The jury was further instructed that "[i]n considering the weight to be given to the testimony of an expert witness, you should consider the basis for his opinion and the manner by which he arrived at it and the underlying facts and data upon which he relied."

testimony and conclude that she was feigning or exaggerating her injuries.[4] *See Mastin*, 238 Va. at 437-38, 384 S.E.2d at 88; *Smith*, 207 Va. at 486, 151 S.E.2d at 363. As the sole judge of the weight to be given to Dr. Whipple's opinion, the jury was also free to discount his opinion, which was based on Gilliam's subjective complaints. *See Mastin*, 238 Va. at 437-38, 384 S.E.2d at 88 (noting that treating physicians relied upon plaintiff's account of the accident in making their diagnoses).[5]

---

[4] Gilliam called two witnesses, other than Dr. Herring, who testified regarding her complaints of pain, though most of that testimony was directed to her complaints of shoulder pain. One witness, Mary Stancil, was a co-employee who began working with Gilliam several months after the accident and was unable to address Gilliam's condition as it related to her initial complaints of low back and neck pain. The other witness, Lucy Whitehead, Gilliam's younger sister, testified that she assisted Gilliam with household chores and care of Gilliam's son after the accident but gave conflicting testimony on whether it was before or after the shoulder surgery. She also gave inconsistent testimony regarding whether Gilliam had fully recovered from the back injury that pre-existed the accident. Neither Stancil nor Whitehead testified that Gilliam complained of back pain after the accident.

[5] Relying on *Bradner v. Mitchell*, 234 Va. 483, 362 S.E.2d 718 (1987), Gilliam argues that "Dr. Whipple's testimony is uncontroverted and must be a fixed part of the verdict." Gilliam's reliance on *Bradner* is misplaced. The principles enunciated in *Bradner* apply when the jury has found that the plaintiff was injured and awards damages that consist of an amount that is "considered as a fixed constituent part of the verdict." *Id.* at 487, 362 S.E.2d at 720. Under *Bradner*, a verdict will be set aside as *inadequate* when the "remainder of the award" is insufficient to compensate plaintiff for proven non-monetary elements of damages. *Id.* These principles have no application here where the jury found that the plaintiff was entitled to no damages. *See Vilseck*, 242 Va. at 15, 405 S.E.2d at 616 (noting, in a zero dollar verdict case, that *Bradner* is "inapposite" because in *Bradner* "the jury found some damages were sustained but failed to take into consideration all the proper elements of damage"); *Mastin*, 238 Va. at 437, 384 S.E.2d at 88 (noting, in a zero dollar verdict case, that *Bradner* is "inapposite" because in *Bradner* "the jury found that the plaintiff was entitled to recover damages but awarded an amount inadequate as a matter of law"). Likewise, in this case, the jury found that Gilliam was not entitled to recover *any* damages. The issue is not whether the verdict was inadequate. Instead, the issue is whether the jury was *required* to award Gilliam damages. *Id.*

Furthermore, the burden was on Gilliam to prove her damages by a preponderance of the evidence.[6] Immel's admission of liability did not relieve Gilliam of that burden.[7] The instructions given by the trial court to the jury, without objection from Gilliam, told the jury that it was not required to award her damages.[8] It is well established that we presume that the jury follows the instructions that are given, and nothing in the record presented here plainly shows otherwise. *See, e.g.*, *Medici v. Commonwealth*, 260 Va. 223, 229, 532 S.E.2d 28, 32 (2000) ("We presume that jurors followed a court's instruction, unless the record plainly shows otherwise.") (citing *Spencer v. Commonwealth*, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990)),

---

[6] Damages are not presumed in a negligence action. "Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred." William L. Prosser, The Law of Torts 143 (4th ed. 1971).

[7] An admission of liability is only an admission of negligence and causation. Therefore, in the context of an automobile accident case, an admission of liability relieves the plaintiff of the burden of proving that the defendant was negligent and that defendant's negligence was a proximate cause of the accident. An admission of liability, however, does not admit compensable damage. Even a finding of liability does not require a finding of some compensable damage. *See, e.g., Vilseck*, 242 Va. at 11, 405 S.E.2d at 615 (upholding zero dollar verdict where "the jury returned a verdict in favor of the plaintiff on the question of liability"); *Mastin*, 238 Va. at 435, 384 S.E.2d at 86 (upholding zero dollar verdict where jury found that the "automobile collision [was] caused by the defendant's negligence").

[8] The jury was instructed that "defendant has admitted that he is liable for any injury the plaintiff received from the accident" and, therefore, "the only issue that you have to decide is the amount of damages, *if any*, the plaintiff is entitled to recover." (emphasis added). The jury was also instructed that "[t]he burden is on the plaintiff to prove by the greater weight of the evidence each item of damage she claims and to prove each item was caused by the defendant. She is not required to prove the exact amount of her damages but she must show sufficient facts and circumstances to permit you to make a reasonable estimate of each item. If the plaintiff fails to do so, then she cannot recover for that item."

Explaining the verdict form to the jury, the trial court stated that the foreperson should "write in the dollar amount that you decide to award in your deliberations." The trial court told the jury "[t]hat number can be zero" or "[t]hat number can be some number other than zero." Following the instructions to the jury, including its explanation of the verdict form, the trial court asked the parties if there was "any objection to the instructions as given" and each party replied that there were no objections.

8

*overruled on other grounds by Townsend v. Commonwealth*, 270 Va. 325, 333, 619 S.E.2d 71, 76 (2005)). Specifically, Gilliam offered no medical testimony to prove that treatment she received for her complaints of lower back and neck pain was medically necessary or related to the accident. In addition, Dr. Whipple did not testify that any treatment she received for lower back and neck pain was medically necessary, testifying instead that medical intervention "can influence that process for better or worse." Therefore, the jury was entitled to find that Gilliam failed to prove, by a preponderance of the evidence, the damages she sought for her claims of lower back and neck injury. *See Smith*, 207 Va. at 485-86, 151 S.E.2d at 362-63.

In sum, we reject Gilliam's claim that the jury was required to award her damages and conclude the trial court did not err in denying Gilliam's motions to set aside the verdict and for a new trial.

### III.

Prior to trial, the parties sought a ruling from the trial court on the admissibility of a statement Immel made at the accident scene. Gilliam's counsel proffered that Gilliam would testify that after the accident, Immel said to her, "You black bitch. I don't have insurance. You're not going to get anything out of me." Gilliam argued the statement should be admitted as "part of her experience with this accident" because "it relates to the mental anguish of what she had suffered in this accident." Noting that it was "having trouble" with Gilliam's position that Immel's statements had "any probative value at all" or "provide[d] any basis for a measure of damages in the context of this case," the trial court stated that the "profane racial remark" would likely "immediately inflame" a reasonable juror in a way the law would not permit. The trial court ruled the comments made by Immel at the scene of the accident would not be elicited during testimony without permission of the court.

9

On appeal, Gilliam argues the trial court erred in excluding Immel's statement from the evidence at trial. We review the trial court's decision under an abuse of discretion standard and will not disturb the trial court's decision to exclude Immel's statement absent a finding that the trial court abused its discretion. *See John Crane, Inc. v. Jones*, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007). Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401; *see also John Crane, Inc.*, 274 Va. at 590, 650 S.E.2d at 855 ("Evidence is relevant if it has any logical tendency to prove an issue in a case.") (quoting *Goins v. Commonwealth*, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996)). "Evidence that is not relevant is not admissible." Va. R. Evid. 2:402(a).

In a negligence action, damages are generally recoverable for the reasonable and proximate consequences of the breach of duty. *Naccash v. Burger*, 223 Va. 406, 414, 290 S.E.2d 825, 830 (1982); *Tullock v. Hoops*, 206 Va. 665, 668-69, 145 S.E.2d 152, 154 (1965). "[M]ental anguish may be inferred from bodily injury" and "when fairly inferred from injuries sustained, is an element of damages." *Kondaurov v. Kerdasha*, 271 Va. 646, 656, 629 S.E.2d 181, 186 (2006). Gilliam brought a personal injury action seeking damages proximately caused by Immel's negligence in the operation of his vehicle. The mental anguish Gilliam contends was caused by Immel's remarks at the scene does not flow from the bodily injuries she claimed, the physical impact of the vehicles, or from Immel's negligence in the operation of his vehicle. Therefore, any such mental anguish was not a proper consideration of Gilliam's damages.

Accordingly, Immel's statement at the scene was not relevant to the issue of damages and the

trial court did not abuse its discretion in excluding it.[9]

IV.

For the foregoing reasons, we will affirm the judgment of the trial court.

*Affirmed*.

---

[9] Although we have recognized the independent torts of intentional infliction of emotional distress, *see Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974), and negligent infliction of emotional distress, *see Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973), Gilliam does not allege either cause of action in this case.