PRESENT:  Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

SHEA CURTIS, ADMINISTRATOR OF
THE ESTATE OF MARY JO CURTIS

OPINION BY
v.  Record No. 190117                          JUSTICE TERESA M. CHAFIN
                                                APRIL 9, 2020
CHRISTOPHER HIGHFILL, ET AL.


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Kimberly A. Irving, Judge


In this wrongful death case, we must determine whether the Circuit Court of Prince

William County erred by striking the evidence supporting a claim for punitive damages against a

physician who repeatedly prescribed narcotic pain medication to a patient.  Under the particular

factual scenario presented, we reverse the circuit court's decision and remand the case to the

circuit court for further proceedings.

## I.  BACKGROUND

When reviewing a trial court's decision to grant a motion to strike the plaintiff's

evidence, we view the evidence presented at trial in the light most favorable to the plaintiff and

accord the plaintiff the benefit of any inferences that may be fairly drawn from the evidence.  *See*

*Green v. Ingram*, 269 Va. 281, 290 (2005).

On March 6, 2011, Mary Jo Curtis broke her ankle.  Dr. Christopher Highfill examined

Curtis and performed an emergency surgery to stabilize and repair her ankle.  Curtis' ankle

fracture did not heal properly.  Consequently, Highfill performed a second surgery on Curtis'

ankle on September 2, 2011.  Highfill performed a third surgery to remove "hardware" from

Curtis' ankle on November 16, 2012.

After the first surgery, Highfill prescribed Percocet to alleviate Curtis' pain. Over the next 40 months, Highfill wrote Curtis 144 prescriptions for Percocet. Highfill generally prescribed between 40 and 60 five-milligram Percocet pills to Curtis on a weekly basis. Throughout the course of Curtis' treatment, Highfill prescribed over 7,000 Percocet pills to Curtis.

Percocet is a drug consisting of acetaminophen and oxycodone, a controlled narcotic substance. Highfill and Curtis discussed the risks associated with the long-term use of Percocet on several occasions. Significantly, Highfill knew that Curtis had an increased risk of developing an addiction to narcotic pain medication due to her history of bipolar disorder and alcohol use.[1]

Despite Curtis' increased risk of addiction, Highfill never attempted to treat her pain with a nonnarcotic medication. Highfill and Curtis discussed lowering her Percocet dosage, but Curtis' dosage remained fairly constant over the course of her treatment. Curtis called Highfill's office each week and requested a refill of her Percocet prescription, and Highfill wrote Curtis a new prescription after reviewing notes from his office staff and Curtis' chart. Curtis then came to Highfill's office and picked up her prescription from a staff member.

Highfill acknowledged that it was important to monitor patients who were taking narcotics for signs of abuse and addiction. However, Highfill did not examine Curtis during the last fourteen months of her life. Highfill examined Curtis for the last time on April 23, 2013. Nevertheless, he continued to write Curtis prescriptions for Percocet. Between Curtis' last

---

[1] Although Highfill testified that he was unaware that Curtis was "abusing" alcohol, his office file contained medical records indicating that Curtis consumed vodka daily. Furthermore, Highfill discussed Curtis' alcohol use with her on multiple occasions.

examination on April 23, 2013, and her death on June 21, 2014, Highfill wrote Curtis 52 prescriptions for approximately 2,400 Percocet pills.

When Curtis requested a new Percocet prescription on March 17, 2014, a staff member wrote a note to Highfill explaining that Curtis had not been examined since April 23, 2013. Despite the note, Highfill wrote Curtis a new prescription for Percocet without examining her or scheduling a future examination. While Highfill testified that he did not see the note from the staff member, he acknowledged that he had Curtis' "chart in [his] hand" when he wrote the March 17, 2014, prescription.

Highfill wrote Curtis 15 Percocet prescriptions after March 17, 2014. Notably, Highfill wrote Curtis prescriptions for 40 five-milligram Percocet pills on both May 2, 2014, and May 5, 2014. Thus, Highfill prescribed 80 five-milligram Percocet pills to Curtis over a four-day period. Highfill wrote Curtis' last Percocet prescription on June 16, 2014. Curtis picked up the prescription from Highfill's office on June 19, 2014, and she was found dead in her home two days later. Curtis' autopsy indicated that her death was caused by an accidental overdose of oxycodone, alcohol, and other prescription medications.

On June 13, 2016, the administrator of Curtis' estate filed a wrongful death action against Highfill and other parties. The administrator maintained that Highfill breached the applicable standard of care in numerous ways, and that Curtis "became addicted to narcotic pain medication, suffered an accidental overdose[,] and died" as a "direct and proximate result" of Highfill's negligence. In addition to the other damages permitted in wrongful death actions, the administrator requested an award of punitive damages. In support of her punitive damages claim, the administrator argued that Highfill's

> actions of prescribing massive amounts of clinically unwarranted,
> highly addictive and dangerous narcotic pain medication to a

patient suffering from alcoholism . . . and bipolar disorder without ever examining, evaluating, monitoring or even seeing the patient for a period of approximately 14 months demonstrated a willful and wanton disregard and a conscious indifference for . . . Curtis' health and safety.

At trial, Highfill conceded that he "breached the applicable standard of care with respect to his care and treatment of . . . Curtis." Highfill, however, argued that his negligence was not the proximate cause of Curtis' death. Highfill moved to strike the administrator's punitive damages claim at the close of her case-in-chief, arguing that a plaintiff must show "willful, wanton, and egregious conduct" in order to state a prima facie case for punitive damages. The circuit court agreed with Highfill's argument and granted the motion to strike the administrator's punitive damages claim.[2] This appeal followed.

## II. ANALYSIS

On appeal, the administrator contends that the circuit court erred by granting Highfill's motion to strike the punitive damages claim. Based on the evidence presented during her case-in-chief, the administrator maintains that a jury could have concluded that Highfill's actions constituted a "willful and wanton" disregard for Curtis' health and safety. Under the specific circumstances of this case, we agree that the administrator's punitive damages claim should have been submitted to the jury.

Code § 8.01-52 addresses the damages that are available to a plaintiff in a wrongful death action. Pursuant to Code § 8.01-52(5), punitive damages "may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others."

---

[2] The jury returned a verdict in favor of the administrator on the remainder of the wrongful death claim at the conclusion of the trial.

4

This Court has addressed the definitions of "willful and wanton conduct" or "willful and wanton negligence" in numerous cases. We have previously explained that "[w]illful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Infant C. v. Boy Scouts of America, Inc.*, 239 Va. 572, 581 (1990) (quoting *Griffin v. Shively*, 227 Va. 317, 321 (1984)).

"Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." *Alfonso v. Robinson*, 257 Va. 540, 545 (1999). "The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness." *Infant C.*, 239 Va. at 581.

> In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

*Id.* (quoting *Thomas v. Snow*, 162 Va. 654, 660 (1934)).

"Ill will is not a necessary element" of willful and wanton conduct. *Id.*; *see also Green*, 269 Va. at 292. A tortfeasor may be guilty of willful and wanton conduct when he "intends his act, but not the resulting harm." *Infant C.*, 239 Va. at 582. If a tortfeasor "realizes or, from facts which he knows, should realize that there is a strong probability that harm may result" from his actions, the tortfeasor may be found to have acted in a willful and wanton or reckless manner

"even though he hopes or even expects that his conduct will prove harmless." *Id.* at 582-83 (quoting Restatement (Second) of Torts § 500 cmt. f, at 590 (1965)).

When a defendant moves to strike a plaintiff's claim for punitive damages, the trial court must determine "whether the plaintiff's evidence, and all reasonable inferences therefrom, was sufficient to permit the jury to find that [the defendant] was so reckless or negligent as to evince a conscious disregard of the plaintiff's rights." *Jordan v. Sauve*, 219 Va. 448, 453 (1978). "Each case raising an issue of willful and wanton negligence must be evaluated on its own facts, and a defendant's entire conduct must be considered in determining whether his actions or omissions present such a question for a jury's determination." *Alfonso*, 257 Va. at 545. "A trial court should resolve any reasonable doubt as to the sufficiency of the evidence in the plaintiff's favor and should grant the motion only when it is conclusively apparent that [the] plaintiff has proven no cause of action against [the] defendant." *Green*, 269 Va. at 290 (alterations in original). "If reasonable persons, upon the facts presented, could differ regarding whether the conduct in question was so willful and wanton as to show a conscious disregard for the rights of others, 'the trial court may not remove the issue of punitive damages from the jury's consideration.'" *PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 346 (2003) (quoting *Huffman v. Love*, 245 Va. 311, 315 (1993)).

Upon considering the evidence presented in this case under our established standard of review, *see Green*, 269 Va. at 290, we conclude that the jury could reasonably have found that Highfill's actions evinced a reckless disregard for Curtis' wellbeing, had the administrator's punitive damages claim been submitted for their consideration. On the record here, the jury reasonably could have determined that Highfill consciously disregarded a known risk to Curtis'

health and safety when he continued to write Curtis prescriptions for Percocet under the circumstances of this case.

The evidence presented established that Highfill, a medical doctor, was conscious of the risks posed by the long-term use of narcotic pain medication. Moreover, Highfill admitted at trial that he knew that there was an increased risk that Curtis would abuse or become addicted to such medication due to her bipolar disorder and history of alcohol use. Highfill discussed the risks associated with the ongoing use of Percocet with Curtis on several occasions and he contemplated lowering her dosage of the medication. Despite Curtis' heightened risk of addiction, Highfill continued to write Curtis prescriptions for Percocet for over three years without attempting to treat her pain with a nonnarcotic medication.

Highfill acknowledged that a patient taking narcotic pain medication for an extended period of time needed to be monitored for signs of drug abuse and addiction. Highfill, however, did not examine Curtis during the last 14 months of her life. During this time period, Highfill wrote Curtis 52 prescriptions for Percocet. While Highfill continued to write Percocet prescriptions for Curtis, he failed to examine her to ensure that she was not abusing the prescribed medication.

Importantly, the evidence presented in this case could have supported the inference that Highfill wrote Curtis multiple prescriptions for Percocet when he knew that he had not regularly examined Curtis for signs of abuse or addiction. On March 17, 2014, one of Highfill's staff members wrote a note informing Highfill that he had not examined Curtis since April 23, 2013. Highfill wrote another Percocet prescription for Curtis on that day, notwithstanding the note attached to the request for the prescription. Highfill wrote 15 additional Percocet prescriptions for Curtis after March 17, 2014.

Although Highfill testified that he never saw the note from his staff member, the jury could have rejected this testimony. *See, e.g.*, *Shumate v. Mitchell*, 296 Va. 532, 551 (2018) (observing that "[t]he jury, as the sole judge of [a witness'] credibility, was entitled to reject h[is] testimony") (quoting *Gilliam v. Immel*, 293 Va. 18, 25 (2017)). Highfill wrote Curtis a prescription for Percocet on March 17, 2014, based on the request attached to the note at issue. Highfill also admitted at trial that he had Curtis' "chart in [his] hand" when he wrote the March 17, 2014, prescription. Under these circumstances, the jury could have reasonably inferred that Highfill consciously disregarded the note when he wrote the March 17, 2014 prescription.

We acknowledge that the evidence presented in this case did not in any way establish that Highfill had "ill will" toward Curtis or that he intended her to suffer any harm. As previously explained, however, "ill will" is not a required element of the willful and wanton conduct underlying a claim for punitive damages. *See Infant C.*, 239 Va. at 581; *Green*, 269 Va. at 292. Based on the evidence presented at trial, the jury could have reasonably determined that: (1) Highfill was conscious of the risks associated with the long-term use of Percocet and Curtis' increased risk of drug abuse and addiction, and (2) Highfill consciously disregarded those risks when he continued to prescribe Percocet to Curtis while knowing that he had not examined her for signs of abuse or addiction for a significant period of time. Accordingly, the administrator's punitive damages claim should have been submitted to the jury.

While reasonable juries might ultimately reach different conclusions concerning the propriety of an award of punitive damages under these particular circumstances, we conclude that the circuit court erred by granting Highfill's motion to strike the evidence pertaining to the administrator's claim for punitive damages.

### III.  CONCLUSION

For the reasons stated, we reverse the circuit court's decision striking the evidence regarding the administrator's claim for punitive damages and remand this case to the circuit court for a new trial pertaining to the administrator's punitive damages claim, should the parties be so advised.

*Reversed and remanded.*